## COX & COX *versus* ROBINSON.

1. The printed statutes of any of the states of the union, purporting to be published by authority of a law of the state, are entitled to be received as evidence, in the courts of this state, of the public acts of such state.

2. Whether this rule would be applicable to *private* acts—*quare.*

3 An individual, acting as the agent of another, to whom a bill has been entrusted for the purpose of, and with instructions to negotiate the same, for the object of discharging a bond, due by the latter to a third person, can not legally, after endorsing such bill, take an assignment of the bond, as indemnity, so as to authorise him to maintain an action on the bond—especially, before he has discharged the bill, as indorser thereof.

4. The situation of an agent, under the circumstances, contemplates a *discharge* not a *purchase* of the bond ; and any redress he is entitled to, is on the bill so indorsed by him, when paid, and not on the bond.

5. An agent will be held to act strictly within the scope of his authority ; and any acts of an agent, not sanctioned by his authority, are void, even if for the benefit of the principal, if not adopted by the latter.

This was an action of debt, instituted by Robinson in Madison Circuit court, against Joshua Cox, and Bartley Cox his surety. The cause of action, was a bond executed by the latter, and made payable to James Powell. Both defendants pleaded payment. The record disclosed the following facts :

Robinson, the plaintiff, being resident at Richmond, where the bond of defendants was payable, J. Cox, forwarded to the former his bill of exchange, with instructions to negotiate the same, and, with the proceeds, discharge the bond ; that Robinson, on the reception of the bill, indorsed it, (being payable to his order) and took from Powell an assignment of the bond, on which this action was prosecuted· It did not appear that Robinson was acting in any other capacity than as the friend or agent of Cox; and he had not, at the time of the institution of this suit, as

yet, discharged and payed off the bill, so indorsed by him to Powell.

On the trial, the following, among other exceptions, not material to a history of the cause, as decided, were taken, which brought the case in review before this court.

The defendant moved the court to instruct the jury that Joshua Cox, by transmitting the bill, and requesting Robinson to negotiate it, and pay the bond, did not authorise him to purchase the bond, and hold it for his indemnity; and at the same time subject Joshua Cox to liability on the bill. But this was refused by the court, who instructed the jury, that Robinson, by the request, was authorised to endorse the bill, and having endorsed it, he might negotiate it, and purchase the bond, or obtain assignment of it for his indemnity; and that such purchase, or assignment of the bond as regarded the obligors, was no satisfaction of it, if at the time of the transfer, it was intended as a purchase, to be held by Robinson for his security; and that the obligors were liable, notwithstanding the liability of Joshua Cox, on the bill.

Defendant also moved for instruction, that the request to Robinson did not authorise him to endorse; and that by endorsing, he only acquired the rights of an accommodation endorser for Joshua Cox, and had no right of action against the latter, until he had paid the bill. This the court also refused, but charged the jury, that Robinson had a right to receive, and hold the bill for his indemnity,

It was again asked by the defendant, that the jury should be charged, that from the evidence, the defendant, Bartley Cox, was discharged, and that plaintiff could not, in the present action, recover against

either defendants on the bond : but the court refused; and charged, that such would have been the case, if Robinson intended to pay the bond as the agent of Joshua Cox : but otherwise, if he intended to receive and hold the bond for his indemnity.

Defendant then requested the court to charge, that in the absence of proof of diligence as against the acceptor of the bill; and of notice to the drawer on its non-payment; the drawer had been injured, and the plaintiff could not recover. The court refused—but instructed the jury, that if they believed Robinson, in endorsing, had looked solely to the acceptor and drawer, and trusted to them alone, and did not look to the obligors of the bond; such notice and diligence would have been necessary—otherwise not.

The court being urged, also refused to instruct the jury, that in the absence of proof of an offer to return the bill to the drawer, and for want of its production on the trial, the plaintiff could not recover.

It was also assigned as error, that the court allowed the plaintiff to read from a book entitled the "Revised Code," being a volume of the statutes of Virginia, published under authority of an act of the legislature of that state : and to show therefrom the rate of interest in Virginia.

*Craighead,* for Plaintiff.—*Hopkins, contra.*

SAFFOLD, J.—The action was debt, brought in the Circuit court of Madison county, by Robinson against Joshua and Bartley Cox, dated 5th April, 1825, drawn in favor of James Powell, payable 15th September then next, at the Richmond Branch of the U. States Bank, for four thousand six hundred dollars.

Both the defendants plead payment : B. Cox also, that he was bound only as the security of J. Cox, who before the institution of the suit, without his concurrence or privity, drew on T. A. Ronalds, in favor of Robinson, for a larger amount, inclosed the bill to him, with instructions that he would use it in payment of the bond mentioned : that Robinson received the bill, obtained an acceptance, and passed it to Powell, the obligee, in payment as directed, who received it accordingly.

Pending the suit, J. Cox filed a bill against Powell and Robinson, for discovery of evidence to be used on the trial at law ; to which they both made answer.   From the evidence thus obtained, (excluding the answer of Powell, which is not now insisted on as evidence,) the only facts material to be noticed are, in substance, the following : a bill of exchange was drawn by J. Cox on Ronalds, payable to the order of Robinson, one hundred days after date, for a sum exceeding the amount of the bond sued on ; it was transmitted to Robinson for the purpose of raising money by the sale or discount of the same, in order to meet the bond debt : when attempting to raise money on the bill, Robinson found he could not do so without endorsing it—the same being necessary, not only to pass the legal right, but also to furnish satisfactory security.   Robinson was unwilling to incur the responsibility of endorsing the bill, unless Powell would deliver the bond to him as indemnity and security for the liability incurred by endorsing; this being agreed to by Powell, and the bond delivered, the bill was sent to and accepted by Ronalds ; it was then endorsed by Robinson, and by Powell sold to the Bank of Virginia, and finally protested for non-payment.

Afterwards, Robinson was sued by the holders of the bill; and judgment obtained against him for the amount thereof, which judgment stood in force against him, but had not been paid. The bill of exchange was drawn in September, 1825. The suit on the bond was instituted in September, 1826. It also appeared in evidence, by the testimony of John H. Lewis, that the defendants below, plaintiffs in error, " spoke of the debt in this case demanded, as *outstanding*."

It further appears that the instrument sued on, having been executed in this state, payable at the Virginia Bank, the defendant in error, on the trial, read from a printed volume, entitle ' Revised Code,' purporting to contain the statutes of Virginia, as published by authority of an act of the General Assembly thereof, a copy of what purported to be the act of said Assembly, prescribing *six per cent. per annum*, as the rate of interest of that state; the object of which, was to prove the rate of interest there. On objection to the sufficiency of this grade of evidence, it was admitted by the court, and the point reserved in the bill of exceptions.

Robinson, plaintiff below, having succeeded in obtaining judgment for the amount of the bond, the defendants therein have sued out their writ of error.

The causes assigned for error, (omitting such as are not now insisted on,) are in substance the following : that the Circuit court erred,

1. In receiving the evidence offered, to establish the rate of interest in Virginia.

2. In the instructions given to the jury, as stated in the bill of exceptions.

1. The question presented by the first assign-

ment, is not entirely *res integra* in this court. It has arisen in several cases; but in most instances, on some point which was found unimportant to the decision of the cause. It is true, however, as suggested in argument, that in the case of *Huff vs. Campbell*,[a] this court consulted the book purporting to contain the printed statutes of Tennessee, and to have been published by the authority of the same, to ascertain the particular organization of the Court of Appeals in that state. The case, as reported, does not shew in what manner those statutes were authenticated; yet the fact is within our recollection, that the reference was to the *printed volume*, as found in the office of our Secretary of State. He having been required, by an existing law, to procure the printed statutes of the several states, in order to increase the facility of making proof of the same in our courts; is also authorised to certify copies thereof for this purpose. We are, therefore, inclined to sustain the position assumed in argument, that such copies can furnish no higher evidnce of the statutes than the printed volumes produced in court. The court, aided by the scrutiny of the adverse party, or his counsel, is presumed no less competent to detect any mistake, or imposition, respecting the verity of the statutes, than any other authority in the same state.

In the case of *Poindexter's Ex'rs. vs. Barker*,[b] Judge Taylor, after having decided on a different principle, reversed a non-suit ordered by himself, and declared his opinion, that the printed book of the laws of Virginia, ought to have been received as evidence thereof; and that the act of Congress was not intended to prescribe one mode only of authentication, in exclusion of all others.

[a] 1 Stewart 543.

[b] 2 Hayw. 173.

The Supreme Court of Pennsylvania maintains the position, that an edition of the laws, published under the authority of the legislature of that state, is evidence, as well of the *private* as of the public laws it contains—*Beddis* vs. *James.*[a] *Tilman*, C. J. remarks, "it has been usual for the legislatures of the several states, to have the laws printed by *authority.* Confidential persons have been selected to compare the copies with the original rolls, and superintend the printing; and from their nature, printed copies of this kind, either of public or private laws, are as much to be depended on, as the exemplification, verified by an officer, who is the keeper of the record. In *England*, there is no provision by parliament, for the publication of the laws: they are printed by the King's printer. There ought, therefore, to be a difference respecting *printed copies* in the two countries." And, going a little beyond the necessity of the case before him, he said, he was for admitting the *printed copies*, authorised by the legislature, either of that, or any other state—whether the laws be public or private. In the case of *Thompson* vs. *Musser*,[b] the same court appears to have admitted the printed copies of a Virginia act of assembly, as evidence of the law it purported to contain. If the analogy be admitted, (and we think, in this respect it may,) between a private act of the state, in which the trial is had, and every act of a different state, the case of *Young* vs. *The Bank of Alexandria*,[c] is strongly in point. On that trial, a law of Virginia, being in question, *Marshal*, C. J. said, the opinion of the court was very strong, that it was a *public* act; and that if it were not, it being printed by the *public* printer, by order of the legislature,

[a] 6 Binny 321.

[b] 1 Dallas 463.

[c] 4 Cranch 338.

agreeably to a general act for that purpose, it must be considered as sufficiently authenticated; but that the counsel might, if they chose, argue the point; which, however, they declined. Hence, we are prepared to adopt the rule, that the printed statutes of any of the states of the union, purporting to have been published by authority of a law of the state, are to be received as evidence here of the public acts of such state. The adverse party should, of course, be permitted to contest and rebut it by any more conclusive shewing. Whether the practice should be the same in regard to *private* acts, is a question that does not arise in this case.

2. A question more important to this contest, relates to the instructions given by the court to the jury. From the bill of exceptions, it appears the counsel for the Coxes, defendants below, moved the court for instructions to the jury to the following effect:

1. That J. Cox, by transmitting the bill to the plaintiff, and requesting him to negotiate it, and pay the bond, did not authorise him to become a purchaser thereof, or to endorse the bill for any other purpose than that expressed in the request; and by endorsing it, he only acquired the rights of an endorser, for J. Cox's accommodation; that his right of action was solely on the bill, and in that way, only after making payment as endorser: which instructions the court refused; and, on the contrary, charged, that by J. Cox's request to negotiate the bill and pay the bond, Robinson was authorised to endorse the bill, as it could not otherwise be negotiated; and that having endorsed it, and thereby made himself responsible for its payment, it was competent for

him by negotiating, to purchase the bond, or obtain an assignment of it to himself for his indemnity, as endorser; and that as to the obligors, such transfer was no satisfaction of the bond, if at the time of the transfer it was intended as a purchase, and that the bond should be held by Robinson, to secure him against loss in consequence of his liability as indorser; and that the obligors were liable on it to to the assignee, notwithstanding J. Cox's liability as drawer of the bill.

2. The plaintiffs in error further moved the court to instruct the jury, that by the transactions mentioned, in the absence of proof of the concurrence, knowledge or consent of B. Cox, he, as security on the bond was exonerated from liability, and the plaintiff below could not recover against either in this suit; which was refused, and instructions given that if Robinson intended to pay off the bond, and take it up as agent of J. Cox, such was the case, but not if he intended at the time to receive and hold it as an indemnity against his indorsement of the bill.

3. The plaintiffs in error further moved the court to instruct the jury, that in the absence of proof of diligence used on the bill as against the acceptor, and for the want of notice to the drawer of non-payment by the acceptor, Robinson could not recover—which the court refused; but on the contrary, charged, that unless the jury believed that Robinson, in endorsing the bill, looked solely to the acceptor, and J. Cox, the drawer, and trusted to them alone, without intending to hold the obligors liable, such diligence and notice were not necessary.

4. The court was further requested to charge, that an offer to return the bill to the drawer, or its produc-

tion then in court, to be surrendered, was necessary to sustain the action; which was refused.

On the first point of the instructions, it is to be observed, that if Robinson was authorised, under the circumstances of this case, to hold the bond in his own right, and sue on it as an ordinary assignee, he must have stood in a very peculiar attitude—one that afforded him two distinct remedies; and he was entitled to the one on the bond before he had paid any thing for it, or absolutely bound himself to do so; for notwithstanding he should be regarded as an accommodation endorser of the bill, he was no less entitled to his remedy, (on using legal diligence,) against the drawer, J. Cox, than against the acceptor, Ronalds; and if he can be viewed as a common indorsee of the bond for a valuable consideration, he had his remedy on it, whether he should ever be required to pay the bill or not, or be found able to do so. If he be viewed as one acting in the capacity of agent merely, it is clear he must act within the scope of the power given him; and admitting that the nature of the authority or agency given, necessarily contemplated the indorsement of the bill by Robinson, (which we think but a rational inference, as it was drawn payable to his order,) it is impossible to suppose J. Cox intended to give him the possession of the bond, thus to be taken up, with an immediate right of action against himself and brother upon it. If he did, the effect would have been, not only to defeat the object of relief and indulgence on the bond, but to continue his liability as well as that of B. Cox, his security to a suit on it; and moreover, on the expiration of the one hundred days, when the bill was payable, and on the legal demand and notice, to cre-

ate a liability against himself, to a suit on it also, for the debt and damages on the protest. This would have been his situation, supposing him to have had no effects in the hands of the acceptor; but the law presumes in such cases that he had · and according to this presumption, the right of action would have continued after payment of the debt by means of J. Cox's effects in the hands of his acceptor. Thus violence would have been done to the object and avowed intention of J. Cox, in requesting the aid or agency of Robinson. He had his election to afford his agency and accommodation indorsement, or to refuse them: if he chose the former he could only claim the indemnity and redress which the law has prescribed in cases of the kind.

That Robinson declined endorsing the bill until it was agreed between him and Powell that he should hold the bond for his security and indemnity, can not vary the case. Powell had no authority to make any stipulation affecting the Coxes: and Robinson having accepted the agency, by acting upon it, could not extend, or vary his authority. The true doctrine on this subject, is understood to be, that when an agent has done the act authorised, and more, his acts are legal and valid, as far as done within the scope or limit of the authority given; but void beyond it.[a] If the acts of the agent, which exceed the authority, be more for his principal's advantage, than a regular execution of the agency would have been, the execution of the power is nevertheless void.[b]

[a] 1 Livermore, 101.

[b] idem, 103

An authority to one to act as attorney in fact for another, *as executrix*—to receive debts due to her as such—to adjust and settle all her accounts *as executrix*, and pay her debts as such, does not authorise the

attorney to accept a bill so as to charge her personally, though, for debts due from her testator. But, if knowing what had been done, and the manner, she acknowledged its justness, and approbated what was done, this implies a special procuration to accept, as the attorney had done.[a] The allusion to this as an outstanding debt, as stated in evidence, was too vague and indefinite to warrant any satisfactory conclusion.

[a] 1 Livermore, 116.

But even if Robinson could legally have held the bond as an indemnity, he must have been damnified before he was entitled to his remedy upon it ; and the law does not regard any injury as sufficient, short of the payment of the money, or something tantamount thereto—such as a discharge to the Coxes, from any future liability for it. The payment of the money is not pretended, nor is it shewn that J. Cox had not effects in the hands of the acceptor, even if that proof could have obviated the objections to this recovery ; but we think it could not.

If one being security for another, and being called on for payment, gives a bond conditioned for payment at a future day, and sue the principal before the payment be made, the action, it is said, can not be maintained. The reasons assigned in such cases, are, that the plaintiff has paid no money, and should he recover the money of his principal, it is possible he may never pay it over to the creditor.[b]

[b] Fell's Tr. 241.

The effect of the procedure, respecting the bill, on the responsibility of B. Cox, the security, is also worthy of consideration. The bill was drawn payable one hundred days after date, and negociated in discharge or satisfaction of the bond. If it was not intended as an absolute discharge of the bond, it must have been so *conditionally*, that the bill should be duly

paid at maturity. The latter is the most favorable light in which it can be viewed for Robinson, and in that aspect, it can amount to nothing less than an agreed suspension of the right of action on the bond for the same term of time. Under these circumstances, the charge of the court that this stipulated forbearance or indulgence, did not affect the right of action on the bond, if Robinson intended at the time to hold it as indemnity against his indorsement, is contrary to the doctrine of this court.

There is no suggestion that B. Cox ever consented to the delay, yet the court instructed the jury, that neither knowlege or consent was necessary. According to the principles of decision in the cases of *Comegys & Pershouse* vs. *Cox & Harris*,[a] and *Ellis* vs. *Bibb*,[b] this indulgence operated as a discharge to the security, and the principle is believed to be well sustained by numerous authorities cited therein, and in the briefs furnished in this case. Unless the action was sustainable against both the obligors, (they having been jointly sued,) it must fail entirely.

[a] 1 Stewart, 262.
[b] 2 ib. 63.

The question as to the effect of a failure on the part of the holders of the bill to fix the liability of the drawer, by demand and notice, is virtually decided by the remarks already made, that the agency contemplated a *discharge*, not a *purchase* of the bond; consequently, Robinson's redress was not on it, but on the bill, and what would be sufficient diligence under the circumstances, should he sue on the latter, will then become a regular question, requiring a decision; or, should he pay the debt, and sue in any different form, his action, must of course, abide a decision on its legitimate merits.

The last point arising on the exceptions, relates to the necessity of returning the bill, or surrendering it in court before a recovery in this action.   As the paper appears properly to belong to the archives of the Virginia court, in which the trial has been had upon it, we would not hold its production necessary, if its absence had been legally accounted for, and supplied by competent evidence that it had been satisfied; and this it is presumed might be done by a duly certified transcript of the record.

On the exceptions herein sustained, we are of opinion the judgment must be reversed; and on the features of the case, as here presented, it would appear unavailing to remand; but at the special request of the defendant's counsel, suggesting that the facts can be materially varied, let the cause be remanded.

TAYLOR, J. not sitting.