MARY S. BLAKE *v.* ALEXANDER McCARTHY.

FERRY. *Power of Legislature to license. Jurisdiction of boards of supervisors.*
  The Legislature has habitually exercised the power of granting licenses to keep ferries, since the first adoption of the constitutional provision giving to boards of police (afterwards boards of supervisors) "full jurisdiction over roads, ferries, and bridges," etc.; and such practice, never having been challenged, so

far as the reported cases show, has the force of a practical interpretation of that provision of the Constitution; and, in the absence of any constitutional prohibition of the exercise of such power by the Legislature, this court is constrained to declare in favor of the power of the Legislature to grant such licenses, subject to the right of the owner of the soil to demand compensation therefor, where the license is granted to another.

APPEAL from the Chancery Court of Warren County.

Hon. U. M. YOUNG, Chancellor.

The case is stated in the opinion of the court.

*T. C. Catchings*, for the appellant.

The constitutional provision under consideration was originally adopted in 1852, and was readopted with the Constitution of 1869; and in the years immediately following such adoption and readoption, the Legislature, in many instances, exercised the power of granting ferry licenses unquestioned. See Acts 1852, pp. 46, 53, 58, 112, 179, 192, 264, 294, 333, 365, 449; Acts. 1870, pp. 328, 561; Acts. 1871, pp. 50, 491, 493, 499. The legislation of other years is full of similar statutes. Where there is any room to doubt as to the proper construction of a constitutional provision, the court must adopt the construction which has been generally accepted as correct, and especially so where such construction occurred contemporaneously with the adoption of the provision. Cooley's Const. Lim. 67; *Ogden* v. *Saunders*, 12 Wheat. 290; *United States* v. *Halstead*, 10 Wheat. 63. The right of the State to establish ferries rests upon that eminent domain which is an attribute of its sovereignty. 3 Paige, 45; 5 Seld. 100; 1 Redf. on Rys. 63. The only limitations upon the right is, that private property must only be taken for public purposes, and that due compensation must be made therefor. State Const., art. 1, sect. 10.

*Cowan & McCabe*, for the appellee.

The act of the Legislature granting to the appellant the privilege of keeping the ferry is unconstitutional and void. The power to establish ferries, and license persons to keep them, is vested by the Constitution exclusively in the boards of supervisors. State Const., art. 6, sect. 20. Where there

is a plain case of an infraction of the Constitution, whether by a general law or a local or private act, the courts will so declare. *Campbell* v. *Union Bank*, 6 How. 625; *Runnells* v. *The State*, Walk. 156; *Thompson* v. *Grand Gulf R. & Banking Co.*, 3 How. 240.

The Constitution confers upon boards of supervisors the power to locate and establish ferries, to appoint persons to keep and own them, to fix the rates of toll, etc. *Tegarden* v. *McBean*, 4 Geo. 283. The jurisdiction conferred is "full," — that is, ample, complete, and perfect. 52 Miss. 740. The Legislature, by reason of its general legislative jurisdiction, may constitutionally pass such laws, with respect to roads, ferries, and bridges, as are general and supervisory in their nature; but the boards of supervisors have the exclusive power to enact such rules and regulations as are special and active in their nature, or in execution of the general laws upon these subjects. That the jurisdiction conferred by the Constitution upon boards of supervisors is exclusive, has been settled by many decisions in analogous cases. 50 Miss. 584; 51 Miss. 100; 53 Miss. 534; 52 Miss. 740; 3 Cow. 713; 11 Pet. 158; 7 How. (U. S.) 393; 9 Wheat. 1; 12 Wheat. 412.

SIMRALL, C. J., delivered the opinion of the court.

Mrs. Blake, Ross, and McCarthy were each applicants to the Board of Supervisors of Warren County for license to keep a public ferry across the Yazoo River, at a point known as Anthony's Ferry, where the highway from Vicksburg to the country along and near the Deer Creek intersects the river. Each petitioner fortified his claim with the signatures of a large number of supporters. Mrs. Blake owned the land on the east side of the river, at the intersection of the road with it, and McCarthy owned the land similarly located on the west bank.

For one or two terms of the board the contestation was continued, at the suit of one or another of the parties, the

last continuance at the instance of Mrs. Blake.   When the
matter came on for final disposition, Mrs. Blake fortified her
claim as riparian owner with an act of the Legislature, passed
after the controversy had begun before the board, and claimed
license from that source also.

The board, conceiving that it had exclusive cognizance over
the subject, under the Constitution and laws, or perhaps
that Mrs. Blake, after a formal submission of her claims to
the license, to the board, had thereby precluded herself from
applying to the Legislature, decided in favor of McCarthy, and
granted him the license, who executed the bond required.

In this posture of affairs, Mrs. Blake instituted a suit of
injunction in chancery, predicating her right on the legis-
lative grant.   On the bill and answer, the interlocutory in-
junction was dissolved, and from that order the appeal was
taken.

The main proposition of the appellee is, that the act of the
Legislature relied upon is invalid, because exclusive juris-
diction over ferries is conferred by the Constitution on the
boards of supervisors, whose duty, and the mode of per-
formance, is fully provided for by the statute.   The language
of the Constitution is, " full jurisdiction " over roads, ferries,
bridges, etc.   Const., art. 6, sect. 20.

This section in the present Constitution, in so far as the
question here raised is concerned, is copied from the twentieth
section of the fourth article of the Constitution of 1832.

The research of counsel has directed us to numerous instances,
since 1832, wherein the Legislature has granted ferry licenses.
Such acts are to be found spread along our legislative history
intervening 1832 and the present time.   It may be fairly said
that the Legislature has been in the habit of exercising the
power.   We are aware of no case among the records of this
court which brought it into question.   No such case has been
reported.   Such practice, begun so early and continued so
long without challenge, has the force of a practical interpreta-

tion of the Constitution, and would control this court, unless it was a clear case of the usurpation of power.

There is no prohibition imposed, in terms, by the Constitution in the premises. The power, on well-settled rules of constitutional construction, resides in the Legislature, unless it is denied by sect. 20 of art. 6. We are so overborne by the long and unquestioned practice of the law-making department, and the general acquiescence in it, that the question does not come before us as *res integra.*

But is the power of the Legislature absolute and without condition? To keep a public ferry is in the nature of a public employment. In England, and in this State, the Legislature, or some delegated body, may establish the schedule of charges. The ferryman is under similar responsibilities as the common carrier. Bac. Abr., title " Ferry ;" Ang. on Highw., sect. 46. He must keep a proper landing, boats, etc., for the safe entry and exit of travellers and property committed to him. *Pate* v. *Henry*, 2 Stew. & P. 101 ; *Richards* v. *Fuqua*, 28 Miss. 692 ; *Powell* v. *Mills*, 38 Miss. 691.

But, whilst this is so, a ferry is regarded in law very much in the same light as a public road. It is an easement or servitude for the public use. The owner of lands on both sides of a navigable river is the owner *ad filum aquœ*, subject to the common right of the public to the use of the stream for navigation. A steamboat, or water craft generally, has no right to come to the bank and put out goods on the land of A. without his consent. In the nature of things, a public ferry implies access to and egress from it, at the pleasure of the public. It necessitates an easement over the land of the riparian proprietors on both sides of the stream. The grant by the Legislature of the privilege to keep a public ferry at a particular place does not, *ex vi termini*, subject the soil or the owners of the respective banks to a right in the grantee to the servitude of the land in getting to and from the ferry by the public. That would be to take private property for public use. It is because of the

'absolute right of the owner of the soil to its exclusive use and enjoyment that this paramount right of eminent domain in the State exists of necessity.   But that is limited by the condition that compensation must be made.

The legislation proceeds on that distinct recognition, for the owner of the soil shall always have the preference to the " license," if he will comply with the law.   Code 1871, sect. 2379.   When the owner declines, the license may be granted to another.   *Ibid.*

McCarthy owned the land on the west bank ; Mrs. Blake, on the east.   Neither of them, either under the statute or as proprietor of the land, had a superior claim to the order for the license.   If the Legislature had not conferred the privilege on Mrs. Blake, and the decision had been with the board, an election between them by that body would have disposed of the privilege.

We do not think the act of the Legislature under which Mrs. Blake claims is void ; and, having conferred the license on her before the board decided in favor of McCarthy, she has the better title.   Of course, Mrs. Blake is subject to the orders of the board as to the execution of a bond, and the schedule of charges.

The order appealed from is reversed, and held for naught, and the injunction reinstated and cause remanded.