CHARLES MOSELEY v. STATE OF MISSISSIPPI.

[45 South., 833.]

1. CRIMINAL LAW. *Indictment. Burglary. Sufficient and insufficient counts. Conviction referable to sufficient count.*

A conviction under an indictment having two counts must be referred to the sufficient count charging burglary with intent to commit larceny and not to an insufficient one charging burglary with intent to commit "a crime."

2. SAME. *Evidence. Presumption.*

Theft being the usual object of burglary a conviction under an indictment for burglary with intent to commit larceny will not be disturbed for want of affirmative proof of the intent, in the absence of evidence that the burglarious entry had a different object.

FROM the circuit court of Hancock county.

HON. WILLIAM H. HARDY, Judge.

Moseley, appellant, was indicted and tried for burglary, convicted and sentenced to the penitentiary for five years; and appealed to the supreme court.

The indictment in this case, omitting the formal parts, was as follows:

"The grand jurors aforesaid, elected, impaneled and sworn

and charged to inquire in and for said county in the state afore-
said, upon their oaths present: that Charles Moseley in said
county on the first day of October, 1906, the dwelling house
of Mrs. Nicol in Bay St. Louis, said county and state, in which
said dwelling house Mrs. Nicol was then and there living, fe-
loniously and burglariously did break and enter with intent
then and there in said dwelling house the goods, chattels and
personal property of the said Mrs. Nicol, in said dwelling house
then and there being, feloniously and burglariously to steal,
take and carry away, against the peace and dignity of the state
of Mississippi.

"And the grand jurors aforesaid upon their oaths aforesaid
do further present that Charles Moseley in Hancock county,
Mississippi, on the first day of October, 1906, the dwelling
house of Mrs. Nicol feloniously and burglariously did break
and enter with intent then and there in said dwelling house
feloniously and burglariously to commit a crime against the
laws of the state of Mississippi, contrary to the form of the
statute in such case made and provided and against the peace
and dignity of the state of Mississippi."

The opinion of the court states the facts.


*McDonald & Marshall,* for appellant.

The indictment is defective in that the second count charges
no specific crime under the laws of our state. This being true,
it is fatally deficient and falls under the condemnation of the
case of *State* v. *Buchanan,* 75 Miss., 349, 22 South., 875, holding
that, as "the crime of burglary consists of two essentials, the first,
burglarious breaking and entering of the house, the second, the
felonious intent to commit some crime therein, both elements
must be laid in the indictment and both must be proved as laid."

We concede that perhaps the first count charges a crime, but
the evidence fails to support the allegations of this count. The
sole evidence tending toward such proof is that of Mrs. Nicol,
who testified that: "The window was shut, and he opened it, and

·came in. He caught my foot, and I caught him by the shirt and cried out, and he went out of the window."

What proof is there to show that the appellant intended larceny rather than rape or murder or arson or other offense which might have been committed in the home of the witness? How could the jury assume that appellant entered solely to steal, take and carry away the witness' personal property, under Mrs. Nicol's statement. ?

This court has always held that a conviction must be upon facts charged in the indictment, and duly verified by proof of commission of the crime charged. As the first count is not supported by the evidence, no conviction could legally follow. *Green v. State,* 67 Miss., 356, 7 South., 326; *State v. Buchanan, supra; Caleb v. State,* 39 Miss., 721; *Pitts v. State,* 43 Miss., 472; *Johns v. State,* 24 Miss., 569.

As upholding our contention that the second count fails to charge a specific crime, hence is defective, see the following decisions: *State v. Buchanan, supra;* Wharton's Crim. Law, § 614; 2 Bishop's Crim. Proc., § 142; Pomeroy's Notes, p. 1102; *People v. Nelson,* 58 Cal., 104.

*George Butler,* assistant attorney-general, for appellee.

We do not controvert the familiar proposition that the crime ·of burglary consists of the two essential elements set forth in the brief of learned counsel for appellant. We contend however that the record discloses these essential elements sufficiently to uphold the conviction. It is clearly shown that the appellant broke and entered the dwelling house in the nighttime without legal right. And it must follow as the night the day that in absence of explanation the law presumes that such wrongful entry was for the purpose of commiting a crime. Certainly the jury were warranted in presuming that such intended crime was theft, when the entry was made at night and under such circumstances as to preclude the commission of any other crime.

In the case of *State v. Fox,* 82 Iowa, 312, in discussing the

propriety of the following instruction, "if you find that in the nighttime the defendant broke and entered the dwelling house described in the indictment, this fact would be strong presumptive evidence that the defendant did such breaking and made such entry with intent to commit some public offense. But such presumption may be overcome by evidence," the Iowa court said: "It is in accord with legal principles, reason and the decisions of this court. Men's purposes are revealed only by their acts. One who breaks into the dwelling house of another in the nighttime, in the absence of explanation of the act, will be presumed to have intended to commit a public offense. His silence as to his intent is evidence that it was to commit a crime. The character of the house entered, the time of the entering and the absence of explanation of such act, raise a presumption of an intent to commit a public offense." The statute law of Iowa made the breaking and entering with intent to commit any public offense, burglary. The appellant, in the case cited, stood indicted for burglary with intent to commit larceny and with intent to commit adultery, and there does not appear actual proof of any intent to commit either of the particular crimes specified, the legal presumption alone governing.

In *Commonwealth* v. *Shedd*, 140 Mass., 451, the defendant was charged with the attempt to commit burglary by attempting to break a window with intent to commit larceny. The Massachusetts court said: "There was evidence tending to prove that defendant broke and opened the window, which was the act alleged to have been done in the attempt to commit the burglary; and the jury might well have inferred, from the circumstances attending the act and from the conduct and declaration of the defendant, that the act was done for the purpose of stealing from the building." In this case cited there was not one scintilla of evidence that defendant intended to steal, nor did he make any statement of any kind as to what his intentions were.

In the case of *Steadman* v. *State*, 81 Ga., 736, the defendant

was charged with attempt to commit burglary by attempting to break and enter a dwelling house with intent to steal there-from. The defendant was seen standing at the window with his hands occupied as if trying to unfasten it. On being de-tected and spoken to, he ran, making his escape from the prem-ises, but was subsequently apprehended. There was no direct evidence of his intent. The Georgia court said, in discussing the sufficiency of the evidence to show intent to steal: "The love of gain, the desire to get and to have, is so widespread a principal of human nature that, other motives being eliminated, that one motive remains as a sort of residuary solvent of con-duct. When there is no other reason for breaking into our neighbor's house near the hour of midnight, if we do at all we are after his property or money.".

And to the same effect are the following cases: *Franco* v. *State,* 42 Tex., 276; *People* v. *Colvert,* 22 N. Y. Suppl., 220; *Woodward* v. *State,* 54 Ga., 106; *People* v. *Winter,* 93 Cal., 277; *State* v. *Teeter,* 69 Iowa, 717; *State* v. *Christmas,* 101 N. C., 749.

We would especially call the court's attention to the case of *State* v. *Worthen,* 111 Iowa, 267. The reported case sets forth the facts as follows: "A man's hands on the person of Grace Fort awakened her at one o'clock at night. She was prevented from screaming by the man's other hand covering her mouth, and she heard a man's voice bidding her keep still. As soon as she could call for help the intruder left the house through the doors which were open. Her father reached the adjoining room as the intruder left, and though giving him chase was un-able to overtake him. By the lamplight and subsequently by the light of the moon he however recognized him as the defend-ant. Evidently he had entered through the window of the bed room wherein Grace, who was sixteen years old, and her sister were sleeping. The upper sash had been lowered a few inches, and was held in position by a piece of lath which had been pre-viously nailed on the oustide. This was removed, the sash let

down, and foot prints, corresponding to defendant's shoes, appeared leading to the window from across the road where a horse and buggy had been standing." Counsel for the defendant, Worthen, on the trial, insisted that, although the motive to enter Fort's house could not be justified, yet the intent to steal could not be inferred from the facts; the indictment charging burglarious breaking and entering with intent to commit theft. The Iowa court held however that the question whether the presumptive intent of defendant was assault upon Grace Fort or theft of personalty in the dwelling house, was for the jury, being a question of fact to be inferred and determined from all the surrounding circumstances. See also *Soto* v. *State,* 53 Cal., 413.

CALHOON, J., delivered the opinion of the court.

The indictment is for burglary and contains two counts. The first, by apt words, charges burglary with intent to commit larceny. The second count charges burglary with intent to commit "a crime." The verdict was guilty as charged in the bill of indictment. The indictment was not demurred to; nor was any defect in it noticed until objection made in the motion for a new trial, in which it is stated that the second count charged no offense and that the facts did not warrant conviction on the first count.

Where one of several counts is defective, a verdict of conviction will be referred by the courts to the valid count, and so it is only necessary to determine whether the facts warranted a conviction of burglary with intent to commit larceny. The testimony for the state, which the jury manifestly believed, showed that the room broken into was occupied that night by eleven people, consisting of Mrs. Nicol, her husband, and nine children. The husband and some of the children occupied the bed, and the wife, with the others, were sleeping on the floor. The burglarious entrance was affected, and the appellant crept across the room, and went to where Mrs. Nicol lay, and pulled

her foot. She screamed, and caught him by the collar, whereupon he took fright and ran out, jumping through the burglarized window. It was not shown that anything was stolen. It is unthinkable that the purpose of the burglar was to ravish the woman, and so the jury were left to conclude from all the facts what his purpose necessarily must have been.

We have examined some of the authorities referred to in the brief of the assistant attorney-general for the state, and arrived at the conclusion that the verdict was warranted. *State v. Fox,* 80 Iowa, 312, 45 N. W., 874, 20 Am. St. Rep., 425; *Commonwealth v. Shedd,* 140 Mass., 451, 5 N. E., 254; *Steadman v. State,* 81 Ga., 736, 8 S. E., 420; *Franco v. State,* 42 Tex., 276; *Woodward v. State,* 54 Ga., 106; 6 Cyc., 245, and notes; and notably *State v. Worthen,* 111 Iowa, 267, 82 N. W., 910. In this last case, which is almost identically like the one before us, the court said: "The defendant insists that, though the motive to enter Fort's house cannot be justified the intent to steal cannot be inferred from these facts. Some presumptions are to be indulged in against one who enters a building unbidden at a late hour of night, else the burglar caught without booty might escape the penalties of the law. People are not accustomed in the nighttime to enter homes of others, when asleep, with innocent purposes. The usual object is theft; and this is the inference ordinarily to be drawn, in the absence of explanation, from breaking and entering at night, accompanied by flight when discovered, even though nothing has been taken. With the conditions as shown by the evidence, we think no presumption can be indulged with reference to his design on Grace Fort. Whether he entered to assault her or to steal was a matter to be inferred from all the circumstances."

The other authorities referred to are in line with this. Under the circumstances shown in this case, all men are bound to presume that the burglar had some motive, and that his motive was to commit some crime. In the vast majority of instances, nearly all, the intent is to steal; and we decline to re-

verse because the jury determined that his motive was to commit theft, rather than the very much more unusual and graver offense of rape, which, as we have just stated, is apparently incredible in a room occupied by eleven people.

*Affirmed.*