POLK *et al. v.* STATE.

(In Banc. June 13, 1932 )

[142 So. 480. No. 29902.]

**Morris & Wingo,** of Hattiesburg, for appellants.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**Anderson, J.,** delivered the opinion of the court.

Appellants, Ernest Polk, Robert House, James Elliot, Willie Johnson, and Tom Graham, were convicted of a misdemeanor, gambling, in the court of a justice of the peace of Forrest county. From that judgment they appealed to the county court where there was a trial de novo, resulting in a verdict and judgment of guilty. From that judgment they appealed to the circuit court

where the judgment of the county court was affirmed. The appeal to this court was allowed by the circuit judge under the authority of section 705 of the Code of 1930 upon the ground that in the determination of the case a constitutional question was necessarily involved.

Appellants were convicted alone upon the testimony of Walter Risher, a constable of Forrest county. He testified substantially as follows: That on a certain night in June, 1931, his son told him that there was gambling going on in the home of appellant Ernest Polk; that his son told him that he had been so informed by someone else, whose name was not given; thereupon the witness, without a warrant of arrest or a search warrant, went to the home of Ernest Polk and went on his premises near one of the windows of the room, wherein he afterwards found gambling was going on, and there listened and heard persons talking and cards falling on a table; that he tried to see the game going on through the window, but was unable to do so; thereupon he took his walking cane, broke one of the panes of glass in the window, raised the shade and saw the game in progress, and saw that the appellants were the parties engaged in it. The appellants objected to the evidence of the constable on the ground of its incompetency. The court overruled the appellants' objection. There being no other evidence in the case, appellants thereupon requested the court to direct a verdict in their favor, which the court refused to do.

The question involved is the constitutionality of section 1235 of the Code of 1930, which follows: "It shall be the duty of the sheriff, coroner, justices, constables, and all other civil officers of the county, and of every police officer of any city, town or village, when they know or have reason to suspect any person to be guilty of a violation of the provisions of law in reference to gambling or gaming, or operating a bucket-shop or any business dealing in contracts commonly called 'futures,' to apprehend such person, with or without warrant, and

bring him before some officer having jurisdiction thereof, and to appear and prosecute such offender; and for that purpose any such officer, if he know or have reason to believe that any gambling or gaming is being carried on in any house, room, or place, may lawfully break into the same with or without warning to the persons therein.''

The statute provides for either an arrest or a search or both with or without a warrant therefor. The last clause of the statute authorizes the officer, for the purposes of making the arrest, to break in and search the house, room, or place. Section 23 of the Constitution provides that the people shall be secure in their persons, houses, and possessions from unreasonable seizures or search, and that no warrant shall be issued without probable cause supported by oath or affirmation specially designating the place to be searched and the person or thing to be seized.

The question is, What is an unreasonable arrest? That question is answered by the decisions of this court in Orick v. State, 140 Miss. 184, 105 So. 465, 41 A. L. R. 1129; Iupe v. State, 140 Miss. 279, 105 So. 520; and Butler v. State, 135 Miss. 885, 101 So. 193. It was held in the Orick case that section 23 of the Constitution prohibits the arrest of a person, without a warrant, for a mere misdemeanor not committed in the presence of the officer, and that evidence obtained by means of an unlawful arrest is not admissible.

In the Butler case the policeman making the arrest had no warrant for the arrest, and did not know at the time of making it that the defendant was committing a crime in his presence, although he suspected that he was. When the policeman undertook to arrest the defendant, the latter fled. In his flight the policeman shot at him. When the shot was fired, the defendant dropped a sack and ran away from it. The policeman found intoxicating liquor in the sack. Upon the evidence of the policeman, the defendant was convicted of the crime of having liquor

in his possession. The court held that section 23 of the Constitution was violated in making the arrest, and that the evidence obtained as the result thereof was incompetent. To the same effect is the Iupe case.

The statute in so far as it authorizes an arrest, without a warrant, for a misdemeanor not committed in the presence of the officer making the arrest, violates section 23 of the Constitution, and that is also true of that part of the statute which authorizes a breaking into of a house, room, or place, for the purpose of searching and making an arrest, without a search warrant.

So far as appellant Ernest Polk is concerned, the evidence against him was obtained by both an illegal search and an illegal arrest, and therefore, under numerous decisions of our court, it was not admissible. That, however, is not true of the other appellants. They have no right to complain of the evidence obtained against them by the illegal search of the premises of appellant Polk. In order for a defendant to avail himself of the constitutional provision against unlawful search and seizure, the search must invade his house or possessions and not the house or possessions of another. Lee v. City of Oxford, 134 Miss. 647, 99 So. 509; Lovern v. State, 140 Miss. 635, 105 So. 759.

Under those decisions, up to the time the constable saw the actual gambling going on and the parties engaged therein, he had invaded no right of the appellants, other than Polk. They were committing a misdemeanor in his presence, and, his presence being legal as to all of the appellants except Polk, their arrest was legal and his evidence against them was competent. It follows from these views that the judgment is affirmed as to all of the appellants except Polk, and as to him it is reversed and he is discharged.

However, the writer of this opinion, speaking for himself alone, is of the opinion that those decisions, holding that, in order for a defendant to avail himself of the constitutional right against unlawful search and seizure, the

search must invade his house or possessions and not the house or possessions of another, are unsound. The invited guests of the owner of the house or possessions ought to be entitled to the same protection as the owner. An invited guest, whether he is a guest for a day, week, month, or year, is rightfully in the home of his host; he is a tenant by sufferance for the time being; it is his home, and he is entitled to the same protection as the host.

Reversed in part, and affirmed in part.

ETHRIDGE and GRIFFITH, JJ., join in this opinion.

**McGowen, J.**, delivered an opinion specially concurring.

In my opinion, this case may be readily and easily disposed of without declaring the statute, section 1235, Code of 1930, unconstitutional, even if it be granted that the record, in anywise, permits the raising of the constitutional question disposed of by a majority of the court.

The reasonable construction of section 1235, Code 1930, is that it requires every officer acting thereunder, without a warrant, to have "probable cause" for so doing.

Risher, the officer, whose evidence is objected to here on the ground that it was illegally procured, acted upon information given by his son that a game was in progress in the house of the appellant Polk. It reasonably appears that the son spoke upon information obtained from an unrevealed source. It may have been an idle rumor, even scandal, so far as the officer knew, and did not constitute probable cause for search or arrest; and, if the objection is properly interposed, Polk is entitled to a reversal of his case and to be discharged, but not so as to the other defendants.

This view disposed of the entire case, and relieves this court of the necessity, in my opinion, of determining the validity or invalidity of the statute involved.

An act of the legislature should never be held to be violative of the fundamental law, unless the right of the

litigant in the particular case before the court requires it to be done.

Courts will not decide constitutional questions, unless necessary to the disposition of the cause before them. Hendricks v. State, 79 Miss. 368, 30 So. 708; Bell v. Kerr, 80 Miss. 177, 31 So. 708; Native Lumber Co. v. Board of Sup'rs of Harrison County, 89 Miss. 171, 42 So. 665; and Town of Flora v. American Express Co., 92 Miss. 66, 45 So. 149.

In the case of Thompson v. Grand Gulf R. & Banking Co., 3 How. 240, 34 Am. Dec. 81, Chief Justice SHARKEY said: "To determine between the constitution and the legislature, is often embarrassing, and always demands a cautious and deliberate investigation. In the inquiry is involved the highest function of the judicial department. The acts of the legislature should be sustained if possible; the constitution must be preserved inviolate."

In the case of Wirt Adams, State Revenue Agent, v. Capital State Bank, 74 Miss. 307, 20 So. 881, 882, THOMPSON, Special Judge, approved the above language, and further said that, "While the obligation rests upon the courts to fearlessly see that the constitution is preserved, still wisdom requires that they should proceed in such matters cautiously; and we think an act of the legislature should never be held to be violative of the fundamental law unless the right of a litigant in the particular case before the court requires it to be done. We are fortified in this conclusion by the opinion of Judge COOLEY, who, in his work on Constitutional Limitations (page 163), says: 'While courts cannot shun the discussion of constitutional questions when fairly presented, they will not go out of their way to find such topics. They will not seek to draw in such weighty matters collaterally, nor on trivial occasions. It is both more proper and more respectful to a coordinate department to discuss constitutional questions only when that is the very lis mota. Thus presented and determined, the decision carries a weight with it to which no extrajudicial dis-

quisition is entitled. In any case, therefore, where a constitutional question is raised, though it may be legitimately presented by the record, yet, if the record also presents some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it, and when consequently a decision upon such question will be unavoidable.' ''

I concur in the conclusion reached by all of us in this case, but upon ground herein set forth.

Judge Cook joins in this concurring opinion.

**Smith, C. J.,** delivered a dissenting opinion.

The objection to Risher's testimony as to what he heard and saw when he broke and looked through the window of the house was made at the close of his testimony by a motion reading as follows: ''Now comes the defendant and moves the court to exclude the testimony offered by the witness Walter Risher, the only witness testifying for the state in this case, for the reason that the testimony brought out by the state through this witness is inadmissible and incompetent as against these defendants.''

For what reason the appellant then claimed that the evidence was incompetent does not appear from the record; but his claim in this court is that it was obtained by an unlawful search of the house in which appellants are said to have been engaged in gambling. The house was owned by Polk, and therefore, assuming for the purpose of the argument that the evidence was obtained by an unlawful search thereof, that fact would render the evidence incompetent only as to Polk, under several decisions of this court, and under the holding of the majority here. This being true, the court committed no error

in overruling the motion; and not even Polk has the right to complain thereat. For the rule is "that if several parties join in an objection, it will not be available to any of them if all are not entitled to interpose it." 3 C. J. 750, and authorities there cited.

The judgment of the trial court should, of course, be affirmed, unless error appears in some of its rulings at the trial; and, while it was within the power of that court to have separated the motion into one by each of the defendants, it was not required to do so, or to suggest to the defendants that they do so.

Should this rule not be applied, and Polk's complaint be here allowed, there are two reasons why the evidence does not bring the case within the provisions of section 1235 of the Code of 1930:

(1) It appears from Risher's testimony that he did not consider the information he had received sufficient to authorize him to arrest the appellants, or to enter the house for that purpose. What he did after receiving the information was to enter Polk's premises to make an investigation of his own, in order to ascertain if gambling was then being carried on in the house. That investigation, therefore, constituted an unlawful search.

(2) The words "have reason to suspect" and "have reason to believe" in the statute can and should be construed to require that belief which the law requires to be founded on probable cause, and the information Risher received is insufficient for that purpose. The source from which Risher's son received the information which he gave to Risher, nor what caused the person from whom his son received the information to reach the conclusion that gambling was then being carried on in the house, are not disclosed. For aught that here appears, that informant may not have been the character of person whose information would constitute probable cause, and his conclusion may have been based on insufficient evidence.

If Risher did not enter Polk's premises for the purpose

of making an arrest, but for the purpose of obtaining evidence on which to make an arrest, or if he entered for the purpose of making the arrest without probable cause for believing gambling was then being carried on therein, his entry of the premises was not authorized by the statute, and he was therefore a trespasser, and the evidence obtained by him, on which to make the arrest, is inadmissible under section 23 of the Constitution.

The foregoing questions are not argued by counsel, but they appear on the face of the record, and should not be overlooked.

If the judgment of a trial court is correct, although for reasons not argued by counsel, it should not be reversed; and the constitutional validity of a statute should not be inquired into, except probably under certain circumstances not presented by this record, when the case can be effectually disposed of without so doing.

This brings me to the constitutional validity of section 1235, Code of 1930, to which I must come under the holding of the majority, which provides that: ''It shall be the duty of the sheriff, coroner, justices, constables, and all other civil officers of the county, and of every police officer of any city, town or village, when they know or have reason to suspect any person to be guilty of a violation of the provisions of law in reference to gambling or gaming, or operating a bucket-shop or any business dealing in contracts commonly called 'futures,' to apprehend such persons, with or without warrant, and bring him before some officer having jurisdiction thereof, and to appear and prosecute such offender; and for that purpose any such officer, if he know or have reason to believe that any gambling or gaming is being carried on in any house, room, or place, may lawfully break into the same with or without warning to the persons therein.''

Section 23 of the Constitution is as follows: ''The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no war-

rant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized.''

That section does not prohibit all arrests without a warrant, but only such as are unreasonable. Under all of the authorities, arrests that were permitted at common law without a warrant are not unreasonable, in the constitutional sense. At common law an officer may arrest without a warrant on probable cause, for a felony not committed in his presence; and for a misdemeanor amounting to a breach of the peace committed in his presence. Am. L. Inst. Res. Torts, Tent. No. 3, secs. 146 and 148; 5 C. J. 401. Such was the law in this state when and for many years after section 23 of the Constitution first here appeared in the Constitution of 1817 (art. 1, sec. 9). That rule was modified by chapter 64, article 276, Revised Code of 1857, by permitting an arrest without a warrant by an officer or private person for any misdemeanor committed in his presence, and such is now the statutory law in many of the states, 5 C. J. 402; and no court, in so far as I am aware, has held that such statutes violate the search and seizure provisions of our constitutions.

The common law has been amended in many states by statute, such as section 1235 of the Code of 1930, which authorize officers to arrest without warrant on probable cause for some misdemeanors not committed in their presence. 5 C. J. 404.

These statutes are also generally held not to violate the search and seizure clauses of our constitutions. Some statutes and municipal ordinances so providing have been held void; but, except in two or three cases, not for the reason that they permit arrests without a warrant where there was probable cause therefor. Note to Ex parte Rhodes, 1 A. L. R. at page 586.

That such arrests in some instances are not only reasonable, but imperative, seems clear. To illustrate: A foreigner, passing through the state in a swiftly moving

vehicle, an automobile or airplane, commits a misdemeanor, not in the presence of an officer, and is preparing to resume his journey, which will take him in a few minutes across the state line. An officer obtains information thereof sufficient to constitute probable cause, and to delay the arrest until a warrant can be obtained would result in the offender's passing out of the officer's and the state's jurisdiction before the warrant could be obtained and executed.

The cases cited and relied on by the appellant are: Butler v. State, 135 Miss. 885, 101 So. 193; Orick v. State, 140 Miss. 184, 105 So. 465, 41 A. L. R. 1129; and Iupe v. State, 140 Miss. 279, 105 So. 520; none of which are here in point. The question there presented was the legality vel non of searches and seizures without a warrant, and not authorized by any statute unless made as an incident to a lawful arrest. In all of them the arrests, or attempted arrests, were without warrants, for crimes of which the officers had no visible evidence, and not authorized by any statute or by the common law.

The case of Moore v. State, 138 Miss. 116, 103 So. 483, 485, which has been followed and approved by this court in numerous decisions, is in point, and is probably controlling here. An automobile Moore was driving was stopped and searched; intoxicating liquor was found therein; and Moore was arrested under section 2, chapter 244, Laws of 1924, which requires an officer "who has reason to believe and does believe that intoxicating liquor is being transported in violation of law, in any" of several named vehicles, to search the vehicle forthwith, and without a warrant; and, if intoxicating liquor is found therein, to arrest the person in possession or control of the vehicle. The question which the court was there called on to decide was the admissibility of the testimony of the officer that his search of Moore's automobile disclosed that Moore was transporting intoxicating liquor therein, which search, being without a warrant, was said by Moore's counsel to violate section 23

of the Constitution. The court held the statute, and therefore the search, valid, for reasons that are pertinent here.

The court there laid down the test of the reasonableness of a search and seizure of property, which, as section 23 of the Constitution includes both persons and property, is applicable here. The court said: ''The reasonableness of a search or seizure is not determined either at common law or under our statutes by the presence or absence of a warrant therefor. It is a judicial question to be determined by the court in each case, taking into consideration the place searched, the thing seized, the purpose for, and the circumstances under which the search or seizure was made, and the presence or absence of probable cause therefor.'' Moore v. State, 138 Miss. at page 155, 103 So. 483, 485.

If that test is applied here, and gambling is a crime of such character that the legislature is warranted in making a special effort to suppress, and, as will hereafter appear, it has for more than a century been so considered, it cannot be said, in my judgment, that permitting gamblers to be dealt with as section 1235 of the Code of 1930 provides is unreasonable, for so to do may constitute a much-desired deterrent for the commission of that crime.

When a court holds that a statute is in conflict with the constitution, it, of course, applies its own judgment thereto, and declares the contrary conclusion of the legislature to be wrong. It, of course, has the right to do this; but should never exercise that right, under all of the authorities, including numerous decisions of this court, unless the court can say with confidence that the legislative interpretation of the constitution is manifestly wrong.

Moreover, ''constructions placed on provisions of the constitution through the enactment of laws and other practical applications of such provisions to legislative business which have long been acquiesced in will not be

overturned by the courts, except on weighty considerations." 12 C. J. 813.

An examination of the history of the legislative efforts to suppress gambling will disclose that this rule should be followed here. That history is in part as follows: Shortly after the state's admission into the Union, the legislature clearly indicated its intention to suppress gambling, and in 1822 enacted a statute entitled, "An act to reduce into one act the several laws to suppress the evil practice of gaming." Laws of 1822, page 336, section 13 thereof, required all magistrates to "cause to be taken and burnt, or otherwise destroyed, all tables and other gaming apparatus, or other materials set up, or opened, for the purpose of gaming," and, when necessary, "to call on any militia officer commanding a company . . . to aid and assist . . . in enforcing the foregoing provision." Section 16 required all magistrates "who shall receive information, or shall have good cause to believe that any person is guilty of any of the offenses specified in this act, to cause such person or persons so suspected to be arrested and brought before him; and if, on examination, the judge, justice or city magistrate, shall be of opinion, that such person is guilty of the charge alleged against him, the said judge, justice or city magistrate, shall bind him in a recognizance, with good and sufficient security, to appear at the next circuit court of the county wherein such offense may be committed, if such court have cognizance thereof to answer said charge, and also that he in the meantime will not be guilty of the like offense with which he stands charged, and in default of his finding such security, to commit the offender to the jail of the county."

The powers there granted and duties imposed seem to have proven inefficient for the purpose intended, so that in 1839 a statute was enacted, entitled, "An act to further discourage and suppress gaming," Hutchinson's Mississippi Code, page 951, which required circuit judges to instruct all grand juries on the law of gaming,

and the grand juries to indict for violations thereof. Section 4 thereof is as follows: "It shall be the duty of every sheriff, or coroner, and of every constable or other peace-officer, when they know, or have reasonable cause, from their own knowledge, or from the information of others, to suspect any person or persons with having violated any of the provisions of this act, within their county or beat, to apprehend or seize every such person or persons, without warrant, and to bring them speedily before some justice of the peace, for the purpose of having them committed or bound over; and it shall be the duty of every such sheriff, coroner, constable, or other such officer, to be and appear at the next succeeding term of the circuit court of their county, and to give information to the grand jury against any and every person or persons so committed or bound over as aforesaid."

These statutes were brought forward into all subsequent codes, and now appear as parts of sections 1235 and 2048 of the Code of 1930.

In 1857 a statute was enacted providing that "to make an arrest, as provided for in this section, any officer or private person, after notice of his office and object, if admittance is refused, may break open a window, or outer or inner door of any dwelling, or other house, in which he has reason to believe the offender may be found." Chapter 64, article 277, page 618, Revised Code of 1857; and was brought forward into the Code of 1871 as section 2777 thereof. Gambling was not one of the crimes for which an arrest was authorized by either code under those sections. In 1880 the statute (Revised Code), when brought forward into the code of that year as section 3027 thereof, was amended so as to read as follows: "To make an arrest, any officer or private person, after notice of his office and object, if admittance is refused, may break open a window or outer or inner door of any dwelling or other house, in which he has reason to believe the offender may be found." No further change

was made in this section when it was brought forward into subsequent codes, it being section 1228, Code of 1930.

In 1892 the statute which originally appeared as section 4 of the Act of 1839, requiring officers to arrest without a warrant for gambling not carried on in their presence, was amended by adding thereto the following: "And for that purpose, any such officer, if he know or have reason to believe that any gambling or gaming is being carried on in any house, room, or place, may lawfully break into the same with or without warning to the persons therein." Section 1383, Ann. Code 1892. These words added nothing to the authority of an officer that he did not have under section 3027, Revised Code 1880, brought forward into the Annotated Code of 1892 as section 1376 thereof, and were probably added to the statute out of abundance of caution, and to impress on officers, not only that they had the right to break and enter houses for the purpose of suppressing gambling then being carried on therein, but to impress on them that it was their duty to do so, for the opening words of the statute are: "It shall be the duty of the sheriff," etc. That section was brought forward into the succeeding codes, as amended, and now appears as section 1235, Code of 1930.

It thus appears that since 1839 an officer has been required by statutes, several times re-enacted, to arrest without a warrant on probable cause for gambling, though not in his presence; and, since 1880, to break and enter houses for that purpose.

In Blake v. McCarthy, 56 Miss. 654, a statute granting a special ferry license to Blake was challenged as violative of section 20 of article 6 of the Constitution of 1869, which granted to boards of supervisors "full jurisdiction over roads, ferries and bridges." In holding the statute valid the court said:

"This section in the present constitution, in so far as the question here raised is concerned, is copied from the twentieth section of the fourth article of the Constitution of 1832.

"The research of counsel has directed us to numerous instances, since 1832, wherein the legislature has granted ferry licenses. Such acts are to be found spread along our legislative history intervening 1832 and the present time. It may be fairly said that the legislature has been in the habit of exercising the power. We are aware of no case among the records of this court which brought it into question. No such case has been reported. Such practice, begun so early and continued so long without challenge, has the force of a practical interpretation of the constitution, and would control this court, unless it was a clear case of the usurpation of power.

"There is no prohibition imposed, in terms, by the constitution in the premises. The power, on well-settled rules of constitutional construction, resides in the legislature, unless it is denied by section 20 of article 6. We are so overborne by the long and unquestioned practice of the law-making department, and the general acquiescence in it, that the question does not come before us as res integra. . . .

"We do not think the act of the legislature under which Mrs. Blake claims is void; and, having conferred the license on her before the board decided in favor of McCarthy, she has the better title."

The reason given for applying this rule there is here strongly reinforced by the fact that the legislature could remove any possible constitutional objection to the statute here under consideration by simply declaring the crime of gambling a felony. Moore v. State, supra.

In State ex rel. Collins v. Jones, 106 Miss. 522, 64 So. 241, 242, the court had under consideration the validity of an amendment to the constitution. The resolution submitting the amendment to the people (see Laws 1912, ch. 416) recites as follows: "Resolved by the legislature of the state of Mississippi, two-thirds of each house agreeing thereto, that the following amendment to the state constitution be submitted to the qualified electors of the state for ratification or rejection at an election to be held

on the first Tuesday after the first Monday in November, 1910, viz.''

Section 273 of the Constitution is, in part, as follows: ''Whenever two-thirds of each house of the legislature shall deem any change, alteration or amendment necessary to this constitution, such proposed amendment, change or alteration shall be read and passed by two-thirds vote of each house, respectively on each day, for three several days.''

One of the contentions of Jones' attorneys was that the constitution requires that the legislature shall expressly declare by a two-thirds vote that it deems the proposed amendment to the constitution necessary; in other words, that the legislature itself pass on the advisability of the proposed amendment, before submitting it to the people.

In response thereto the court said: ''We think the amendment was properly passed by the legislature, as the petition alleges, and as the demurrer to the petition seems to admit, but, regardless of this, the method adopted by the legislature in the instant case was in strict conformity with the plan adopted for the submission of constitutional amendments both before and after the incorporation of section 273 in the Constitution of the state, as will be seen by reference to the following acts of the legislature, where submissions of amendments have been proposed and acted upon, viz.: 1854, p. 173; 1872, p. 163; 1876, pp. 30, 127; 1878, p. 203; 1900, p. 239; 1904, p. 223; and 1908, p. 259. In view of this long-continued contemporaneous construction by the legislative department of the state of what constituted the proper method of submitting constitutional amendments, and the fact that the framers of the constitution must have been familiar with this method of submitting proposed amendments, we do not think that this contention is sound.''

What occurred there with reference to the legislative construction of the constitution has, as hereinbefore set forth, occurred here.

I suspect that what makes the statute bulk large in the legal eye is not its provision for an arrest without a warrant on probable cause, but its provision for breaking and entering houses in order to make the arrest. These provisions are separable, and the former may be held valid and enforcible, though the latter be held void. I freely confess that permitting a private dwelling to be broken and entered without a warrant therefor, for the purpose of arresting a person therein for a crime involving no breach or disturbance of the peace, is a very serious matter. But that, within limitations not necessary to be here set out, is for the determination of the legislature, and, as hereinbefore said, the legislature could remove any possible constitutional objection to the statute by simply making gambling a felony. But the statute is not limited to private dwellings; and one of its evident purposes is to authorize an officer to break and enter houses commonly known as gambling houses, prohibited by section 962, Code of 1930, when he has probable cause to believe that gambling is then being carried on therein, for the purpose of suppressing the same and arresting the persons engaged therein, without the delay incident to the obtaining of a warrant therefor, which delay might result in the removal of all evidence of gambling from the premises before the warrant could be obtained and executed. Moreover, this provision of the statute has no application to past offenses, but is limited to such as the officer has probable cause to believe are being committed in the house at the time he enters it.

It follows from the foregoing views that I am of the opinion that the judgment of the court below should be affirmed on the first proposition, hereinbefore discussed. If not, then it should be reversed as to the appellant Polk on the two second propositions hereinbefore discussed; and, if not, and the reversal depends on the con-

stitutional validity of section 1235 of the Code of 1930, it should be affirmed, that statute, in my opinion, being valid.