THOMAS FONDREN, ALIAS TOMMY TAYLOR *v.* STATE

No. 43471 May 31, 1965 175 So. 2d 628

242

*Ethridge & Grisham,* Oxford, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

RODGERS, J.

Appellant was indicted, tried and convicted in the Circuit Court of Lafayette County, Mississippi, for the crime of burglary with intent to rape, and was sentenced to serve a term of eleven years in the State Penitentiary. From this conviction, he has appealed to this Court. The indictment was brought under Mississippi Code Annotated section 2036 (1956).

The facts testified to are as follows: On April 13, 1964, Miss Marilyn Stephens of Oxford, Mississippi, who lived with her mother and father, and was a student at the University of Mississippi, arrived home about 3 P. M. She was alone, her parents being at work. She got a glass of water, and walked through the house. Looking out of her bedroom window, she saw a young Negro man outside, looking in. She attempted to telephone for help, and on hearing the doorbell, she discovered that he had entered the house. When she inquired what he wanted, he said "Do you know this man?" She told him to "get out", he came toward her, and she threw the water glass at him. He grabbed her by the shoulders, and around the body, she screamed and resisted. He told her he had a gun. She continued to scream and resist, and he ran out of the house. She again attempted to telephone for help, and while she was talking to her mother, he returned and attacked her again. During the scuffle, she told him the police were coming, and he left, running toward the University. She saw her assailant three times and had an opportunity to observe his physical appearance and his clothing. Other witnesses testified that about the time of this occurrence, a young Negro man was seen by them running across the street, and on the sidewalk in front of prosecutrix' home. They identified defendant as being the person seen by them.

After the Negro left her home, Miss Stephens ran to the home of a neighbor, where she stayed until her

mother arrived a few minutes later. She was very upset but related what had happened, describing her assailant to the neighbors and her mother. She also described him to a Mr. Burrow, a policeman. Later in the afternoon, the police brought a number of Negro boys to her front yard for the purpose of identification, but after viewing them carefully, she failed to find her assailant in the group. She told her parents the following day that she was positive that she had seen the man previously but could not remember where. During the investigation, the police went to the Ole Miss Drive-Inn where the defendant worked, and talked to the owner. They discovered that the accused had assumed two names. The officers asked the defendant to go to town with them and he said "All right." He got into the car with the police and went with them. En route to town the defendant told the officers where he had been on the day the crime is alleged to have been committed. He was asked about the clothes he had on the day before and the day of the attack. He told the officers where the clothes were, and after the officers stopped in front of the police station, they went with the accused to his room. The officers obtained a coat there, belonging to Clyde Berry, and a hat, but the articles of clothing described by the defendant were not in his apartment. The officers left the defendant's room and went to Charley Fox's house where the defendant's shirt was being washed in a washing machine. The officers obtained the shirt, and a green pair of pants belonging to Andrew Burch. The officers and defendant then returned to the police station. The accused was requested to put on the shirt and coat. The prosecutrix was brought into the room, and the accused was asked to repeat the words "Do you know this man?" in the presence of the prosecutrix. Miss Stephens then said to the officers: "If it is not him, it is his twin brother." When prosecutrix identified the defendant during the

trial, she said she thought what she said to the officers as to the identification was sufficient.

The defense in this case is an alibi. The defendant testified as to his whereabouts at the time the crime was committed. He was corroborated by other witnesses. The testimony showed that the accused lived in an apartment in the City of Oxford with four other boys. He worked at the Ole Miss Drive-Inn, usually at night, where he waited upon cars. He denied that he knew Miss Stephens, or where she lived, although he admitted that his mother had worked for a neighbor of Miss Stephens for approximately twelve years. He denied he attacked the prosecuting witness.

The witnesses for the defendant testified that at the time the alleged crime was said to have been committed that the defendant was with them at John Wesley Mitchells home, and that they were looking at a television program.

Miss Barbara J. Hopson, an instructor in the Department of Health and Physical Education at the University of Mississippi, testified that she was passing a place, admitted to be the home of the prosecutrix, on April 13, 1964, between three and four o'clock (about the time of the alleged assault) and that she saw a young Negro man run out of a house, across a lawn and into the street, directly in front of her. She was positive that the man she saw was not the defendant.

At the conclusion of the evidence, the defendant requested the court to direct a verdict of acquittal. This motion was overruled and the case was submitted to the jury. The jury returned a verdict of guilty. Whereupon, defendant was sentenced, and a judgment was entered accordingly.

I

The first point complained of by appellant is that the proof does not show that the defendant broke into and entered the dwelling in the manner contemplated

by Mississippi Code Annotated section 2036 (1956). The testimony shows that the front door of prosecutrix' house was open but that the screen door was closed and latched. This section requires that the breaking and entering be "either by forcibly bursting or breaking the wall, or an outer door, window or shutter, of a window of such house, or the lock or bolt of such door, or the fastening of such window or shutter, or *by breaking in in any other manner* . . . ." (Emphasis supplied.)

 █ The breaking may be established by proof of the slightest use of force in entering. "By breaking is meant any act of force, regardless of how slight, necessary to be used in entering the building — the turning of a knob, a slight push to further open the door, the raising of a latch — these and like acts are sufficient." Gross v. State, 191 Miss. 383, 2 So. 2d 818 (1941). See also Nichols v. State, 207 Miss. 291, 42 So. 2d 201 (1949).

In 12 C. J. S. *Burglary* section 3 (1938) at 670, it is said:

"There is a sufficient breaking at common law, and a 'forcible breaking' within the meaning of a statute, where a person enters by unlocking or unlatching a door, or by lifting a hook with which a door is fastened, or even by pushing open a door which is shut, but neither locked nor latched, or a window, transom or trapdoor which is entirely closed, although not fastened, but held in place by its weight only, or by pulley weights, and in many other cases where any degree of force is used."

 █ We see no merit in this contention.

II

The next point claimed by appellant is that there was no proof to show the intruder intended to commit rape, as charged in the indictment.

As hereinbefore shown, the defendant had served this young lady at the Ole Miss Drive-Inn on numerous oc-

casions, or a number of occasions. He was seen by her looking in the window, and when she saw him, and he realized it, he jumped away from the window. Then he entered the front door while she was trying to telephone, opening the screen door and coming in, ringing the bell, and when she came into the living room, he asked her "Do you know this man?" When she hollered to him to get out and threw a glass at him, he grabbed her arms and put his arms around her body, saying that he had a gun. Then when she screamed, he ran. He returned immediately after that and grabbed her around the body again, and did not leave until she told him that the police were coming.

██ ■ ■ Appellant argues that there was not sufficient evidence to establish an intent to rape, and relies on cases of attempted rape decided by this Court, such as Tremaine v. State, 245 Miss. 512, 148 So. 2d 517 (1963); Pew v. State, 172 Miss. 885, 161 So. 678 (1935); Spurlock v. State, 158 Miss. 280, 130 So. 155 (1930); Green v. The State, 67 Miss. 356, 7 So. 326 (1890). All of the cases cited to sustain the appellant's view were cases where the defendant was charged with an actual attempt to forcibly ravish. The law requires proof of all elements of the crime of attempted rape. In the instant case, there was no consent to the entry of appellant; he had no business there; he was not invited in the house; he opened the closed door and entered without the knowledge, consent or permission of any person. Under this statute, Mississippi Code Annotated section 2036 (1956), breaking and entering with intent to commit a crime constitutes the offense under that section. Under Section 2036 of the Code, *supra,* the following elements are essential to the crime: (1) the breaking and entering a dwelling house of another in which, at the time, some human being shall be present; and (2) such breaking must be with intent to commit a crime therein. No question is raised as to the first element

of the charge. The second, or the intent to commit some crime therein, is simply an element of the crime of burglary. It is not necessary that all of the elements of the crime of assault with intent to rape be proven. The intent, however, to commit a crime must be alleged and proved. Taylor v. State, 214 Miss. 263, 58 So. 2d 664 (1952).

In 12 C. J. S. *Burglary* § 55 (1938) at 731-732, we find the following:

> "As the criminal intent alleged in the indictment is an essential element of the offense, it must be established affirmatively by the evidence beyond a reasonable doubt, unless there is a statute allowing presumption of intent from the breaking and entering. The intent, however, may, and generally must, be proved by circumstantial evidence, for as a rule it is not susceptible of direct proof; and it has been held that the evidence of intent sufficient to support a conviction of burglary may be slight, in the absence of any evidence that the entry was made with any other intent. . . . Even where the felony was not actually committed, an intent to commit it may be inferred from the time and manner at and in which the entry was made, or the conduct of accused after the entry, or both."

See Moseley v. State, 92 Miss. 250, 45 So. 833 (1908).

Lee v. State, 201 Miss. 423, 29 So. 2d 211 (1947) involved an assault with intent to ravish a female of previously chaste character. It was shown that a screen window had been forced open and the victim was awakened at night by severe blows upon her head. This Court said: "The purpose of such entry and assault is necessarily provable circumstantially. Here the existence of a criminal intent is clear and a specific intent to ravish is, at least, consistent with the proven facts and reasonably inferable. A burglarious breaking is evidence of some unlawful purpose. Thompson v. State,

124 Miss. 463, 86 So. 871; Moseley v. State, 92 Miss. 250, 44 So. 833.''

In 13 Am. Jur. 2d *Burglary* section 52 (1964) at 352 it is stated: ''Intent is a state of mind existing at the time a person commits an offense. If intent required definite and substantive proof, it would be almost impossible to convict, absent facts disclosing a culmination of the intent. The mind of an alleged offender, however, may be read from his acts, conduct, and inferences fairly deducible from all the circumstances.''

This Court, in the case of Thames v. State, 221 Miss. 573, 73 So. 2d 134 (1954), cited 9 Am. Jur. *Burglary* section 62 (1937), announced the above rule with approval.

This Court in the Thames case commented on the case of Pew v. State, 172 Miss. 885, 161 So. 678 (1935); and in the opinion in the case of State v. Lindsey, 202 Miss. 896, 32 So. 2d 876 (1947), in a case of attempted rape, the Court stated: ''Those cases did not involve the felonious breaking and entering of a dwelling in the nighttime where a female was sleeping. Here the felonious breaking and entering is evidence of some unlawful purpose. The criminal intent is clear. The specific intent to ravish is consistent with the proven facts and is reasonably inferable.''

 We hold that the fact that the defendant under the circumstances hereinbefore shown broke and entered the building is evidence of some unlawful purpose. A criminal intent is clear. The specific intent to ravish is consistent with the proven facts and is reasonably inferable. The matter was submitted to the jury on proper instructions and we feel they were justified in their decision insofar as this question is concerned.

### III

Appellant asserts that the original identification was the result of illegal suggestion or intimidation, and that it is against the overwhelming weight of the evidence.

Miss Stephens was positive in her identification at the trial that the defendant was the man who entered her house and whom she had seen looking in the window. She testified that he wore a blue shirt and that his pants were "medium green or medium grey." She also said he wore a white jacket; that he had a hat in his hand; and that he had a little mustache. She also said that the shirt was a button-down shirt. The defendant admitted that on the day of the occurrence he had a small mustache; that he wore a blue shirt and green pants; that the shirt was a button-down shirt, as was testified to by Miss Stephens; and that he owned a hat, which he wore in the wintertime. He denied that he was wearing a coat.

In making the identification, the officers had brought to the home of Miss Stephens several young men whom they considered to be within the scope of the description given to them by Miss Stephens, and she had, without hesitation, stated that neither of these persons were her assailant. On Monday afternoon, at the police station, she identified the defendant, and although he was exhibited to her, but not in company with others, we think the fact that others had been shown to her on the day before and that she had said the guilty party was not among them carried weight but is nevertheless a question for the jury. Counsel for appellant argue that identification of a person in a line-up is the proper method, and to exhibit one individual is not adequate. However, where a person views a number of people, and from that number selects one, although seeing them at different times, is a different situation.

 █ Miss Stephens had picked this defendant out of a number of other persons, and she was positive in her identification. Whether or not she was correct, is a question for the jury. We think the identification of defendant by Miss Stephens is not against the over-

whelming weight of the evidence and that it was sufficient to take this issue to the jury.

## IV

It is contended by appellant that his constitutional rights of immunity upon self-incrimination was violated by the police in that they required him to repeat the words alleged to have been used by him at the time of the crime, and therefore the identification of appellant, based upon his voice, had no probative value and a conviction thus obtained should be reversed.

The appellant cites Mississippi Constitution Article 3 section 26 (1890), wherein it is said: "and he shall not be compelled to give evidence against himself . . . ." as authority for his contention. He calls attention to the ruling of the Supreme Court of South Carolina in the case of State v. Taylor, 213 S. C. 330, 49 S. E. 2d 289, 16 A. L. R. 2d 1317 (1948). In that case, it appears that one of the major questions in controversy was the ability of the prosecutrix to identify the defendant, and the officers attempted to testify that each of the suspects was required to repeat certain words which the prosecutrix had previously stated was used by the person who assaulted her. When the officers stated to the prosecutrix that if she could identify one of these Negroes as her assailant to touch him, and it is said that she "started toward one of the Negroes but when cautioned by the sheriff to 'be sure you are right', she paused and then placed her hand on appellant. When asked "You are confident he is the one?" she replied "Oh, yes, and that voice that said them words over and over to me, I will never forget that." The testimony further shows the identification was made by the voice. The South Carolina Court held that this was in violation of the constitutional rights of the accused against self-incrimination, since the identity was based solely upon the enforced repetition by appellant of words alleged to have been used at the scene of the crime.

This Court, however, has passed upon this question in the case of Pickett v. State, 164 Miss. 142, 143 So. 692 (1932), wherein we said:

> "It is insisted that the evidence of Mrs. Hathcock is not sufficient upon which to rest the conviction, because her main reason for identifying him was knowledge obtained by a recognition of his voice. We do not think there is any merit in this contention for two reasons: (1) While being robbed in the daytime, Mrs. Hathcock obtained some information independent of her recognition of his voice; and (2) the appellant, Pickett, was missing from his home during the time of the robbery, having left home shortly before that time, and returned shortly after the robbery, having upon his person a number of $20 bills. . . ."

*Pickett* is in point on the facts in the case at bar for the reason the prosecuting witness here, in the trial court, positively identified the defendant, not only from his voice but because of his size, age, facial features and a mustache. It is said by the textwriter in 22A C. J. S. *Criminal Law* section 616 (4) *Voice* (1961) at 431-432:

> "The sound of the voice is a relevant circumstance to be considered on the question of identity of accused. Even evidence consisting solely of the recognition of the voice of accused by the witness, as in the case of testimony as to telephone conversations had with accused, is admissible to establish the identity of accused. Evidence that the witness had mistaken the voice of another person at a different time, the conditions not appearing to be the same, is irrelevant, as is also evidence that other persons had mistaken another man's voice for that of accused."

In the case of Bechem v. State, 144 Tex. Crim. App. 272, 162 S. W. 2d 706 (1942), the Court also held that requiring a prisoner to say words was in violation of

his constitutional rights, but the overwhelming majority of the cases hold to the contrary.

The Supreme Court of Pennsylvania had this question before it in the case of Commonwealth v. Sliva, 202 Pa. Super. 455, 198 A. 2d 354 (1964), and in this case the Court said: "Defendant was not denied a constitutional right because the privilege of self-incrimination does not allow a defendant to refuse a witness the opportunity of seeing him and hearing his voice for the purpose of identification."

The case of Aaron v. State was appealed to the Supreme Court of Alabama on two occasions, first in 1960 — 122 So. 2d 360 — and again in 1961 — 139 So. 2d 309. During the process of identification, the defendant was asked to repeat words which prosecutrix testified that her attacker had said to her, and that Court held that this did not violate the defendant's constitutional rights on the basis that he was compelled to give evidence against himself.

In the case of Wright v. State, 364 S. W. 2d 384 (Tex. Crim. App. 1963), and in the case of Johnson v. State, 167 Tex. Crim. App. 53, 318 S. W. 2d 76 (1958), the Texas Court would not reverse because no objection was made to the testimony in the lower court, but in the first case, the Court said: "We also observe that the identity of the appellant was positively shown by the prosecutrix' testimony two different times prior to this complained-of evidence, without objection."

In the case of Eidson v. United States of America, 272 F. 2d 684 (Tenth Cir. 1959), where the prosecutrix recognized defendant's face and also identified him from words he said, the Court held "it is the rule clearly expressed in a definitely established line of well-considered cases with which we are in accord that such testimony is proper and appropriate as establishing a circumstance for the consideration of the jury in determining the question of identity."

In the case of State v. Williams, 245 Iowa 494, 62 N. W. 2d 742 (1954), it was said: Where evidence was conflicting the question whether defendant gave pre-trial voice demonstration under compulsion, the evidence of demonstration was properly admitted.

In the case of State v. King, 84 N. J. Super. 297, 201 A. 2d 758 (1964), the Court pointed out that the admission of testimony of robbery victim that she identified defendant in a police line-up, and that such identification was based in part on her recognizing the sound of defendant's voice, was admissible in evidence, although police had made accused repeat in her presence words spoken by the actual robber during the robbery. The Court held that voice demonstrations, properly conducted, did not conflict with privilege of immunity from self-incrimination, and if identification is based upon it, it is admissible in evidence.

The great majority of cases hold that "voice-recognition testimony", in identifying an accused, is direct testimony and may be introduced by the State. Annot. 70 A. L. R. 2d *Identification — Accused's Voice* (1960) at 995-1011. See also Ramon v. State, 285 S. W. 2d 225 (Tex. Crim. App. 1955); Lucas v. State, 271 S. W. 2d 821 (Tex. Crim. App. 1954); State v. Williams, 245 Iowa 494, 62 N. W. 2d 742 (1954).

In the case of Johnson v. State, 167 Tex. Crim. App. 53, 318 S. W. 2d 76 (1958), the Court said:

"Appellant contends that his constitutional rights against incriminating himself were violated. On direct examination, the prosecutrix testified as stated above. On cross-examination, she stated, without objection, that the officers required the appellant to repeat the words he used at the time he took her purse for the purpose of assisting her in her identification. Having brought out this testimony by his own interrogation, the appellant may not now be heard to complain, and the holding in Bechem v. State, 144

Tex. Cr. R. 272, 162 S. W. 2d 706, finds no application here.''

■■ ■ In the case now before this Court, there was no direct testimony offered to the jury by the State, that the accused was identified by his voice. This testimony was brought into the case by the defendant himself, and he cannot now be heard to complain that this testimony was given to the jury.

### V

The appellant next complains that he was unlawfully arrested; that his room was unlawfully searched, and that the clothes which were used in the identification, and which were introduced in evidence at the trial, were illegally obtained, and therefore the court committed reversible error in allowing the introduction of such evidence.

■■ ■ We do not believe that the testimony in this case shows that the defendant was under arrest until after he was identified. The mere fact that police officers asked defendant during the investigation of the crime to come away from a place of business or some public place to a private or quiet place where their conversation would not be disturbed is not an unlawful arrest. ■■ ■ An arrest is not consummated until there has been a taking of possession of a person by manual caption, or submission on demand; and although a manual touching is unnecessary unless there is resistance to an arrest, there must be restraint of a person to establish an arrest. ■■ ■ The testimony in this case shows positively that defendant, after having agreed to go to town with the officers, was left in the automobile by himself at a time when the officers went into police headquarters. The mere fact that these officers talked to accused in police headquarters before he was identified and taken to jail does not establish that defendant was under arrest at the time. The defendant contends that his clothing was unlawfully taken from his apart-

ment by illegal search and seizure, and that it was used by the police to aid in his identification, and should not have been introduced in evidence. We do not believe there is any merit in this contention for the following reasons: In the outset, it must be borne in mind that the rule here sought to be invoked is one of evidence. It is called the "exclusionary rule". It has been said that "This rule that provides that no evidence illegally or unconstitutionally seized can be used in the trial of the accused is called the 'Exclusionary Rule' ''. State v. Vuin, 185 N. E. 2d 506 (Ohio 1962). This rule has never meant that because an officer trespassed upon the property of accused, the court is required to acquit him of criminal charges because of a trespass. ██ ██ The exclusionary rule simply means that testimony illegally obtained cannot be used against the accused in court. State v. Mapp, 170 Ohio St. 427, 166 N. E. 2d 387 (1960) ; 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

██ ██ The testimony in this case shows that the accused testified that the officers went with him to his apartment but that he did not see the clothes in it and he told them they were in another house being washed, and that "we went down there and got the clothes, they was in the washing machine being washed, and we got the clothes out of the washing machine and came back up to the police station." He testified that they got the blue shirt and green pants, and that the shirt belonged to him but that the pants belonged to Andrew Burt. He said they went back to his apartment and got a coat belonging to Clyde Berry, and a hat. The articles taken from his apartment were not introduced in evidence. The shirt was introduced in evidence. We are of the opinion that the introduction of a shirt in evidence, obtained at another house, was not in violation of the defendant's constitutional rights because he could not object to the search of property he did not own. The

introduction of the shirt in evidence was not reversible error. [1]

## VI

The evidence with reference to the other articles of clothing was introduced by defendant, first on cross-examination of the prosecuting witness, and next by defendant's own testimony.

■■ He chose to introduce the evidence that the police took articles of clothing belonging to Clyde Berry from his apartment, and held them up or required him to put them on in an effort to weaken the identification made by the prosecutrix. We are of the opinion that the defendant cannot now complain, since this evidence was given to the jury by his own testimony, and was not introduced by the State, although it would have been objectionable had the State offered this evidence.

■■ The contention of the appellant that the officers wrongfully required him to put on articles of clothing for the purpose of identification is not well-taken because (1) the evidence is conflicting as to whether or not defendant was required to put on clothing, and (2) putting on the clothing is not requiring him to testify against himself. Richardson v. State, 168 Miss. 788, 151 So. 910 (1934).

## VII

■■ The appellant next contends that the court committed reversible error in not sustaining appellant's motion to quash the jury panel upon the ground that several of the jurors were employees of the county or state, or related to the sheriff. We are of the opinion that the judge's refusal to quash the jury was not reversible error. This question was raised in Goldsby v. State, 240 Miss. 647, 123 So. 2d 429 (1960), Cert. Den. 365 U. S. 861, 5 L. Ed. 2d 824, 81 S. Ct. 829 (1961), and this Court held adversely to the contention of appellant.

Appellant contended that the court committed reversible error in permitting the sheriff to remain in the

courtroom during the trial of the case, although he was a witness.

 In the case of Graham v. State, 195 Miss. 291, 15 So. 2d 478 (1943), this Court pointed out that it was within the sound discretion of the trial judge to permit the sheriff to remain in the courtroom during the trial of the case, although he was a witness. This Court has held that a case will not be reversed because of the ruling of the trial judge on such question unless it manifestly appears that there has been an abuse of discretion. See Chilcutt v. Keating, 220 Miss. 545, 71 So. 2d 472 (1954). See also 5A C. J. S., *Appeal & Error* § 1610 (1958). We have heretofore pointed out that this is a rule of court and not of law. Wilson v. Peacock, 111 Miss. 116, 71 So. 296 (1916). The sheriff or his deputies are required to attend all sessions of the circuit court, (Miss. Code Ann. § 4240, 1956), and it is obvious that the trial judge may at times require the presence of the sheriff in the courtroom during the trial of cases in which he may be a witness. Since the sheriff is an officer of the court, this ruling of the court in this regard is necessarily discretionary. We find no reversible error in permitting the sheriff to remain in the courtroom.

## VII

 It is next contended that the court erred in not declaring a mistrial after the officer had testified about having previously arrested the defendant. The record shows in this case that the officer was asked if he had seen the defendant before, and he stated that he had arrested him "before." The defendant objected to this testimony, and the court said: "Sustained, and Gentlement of the Jury, you will disregard the answer and it will be stricken from the record." Defendant's attorney then moved the court to direct a mistrial, which was overruled. We are of the opinion that the court's action in overruling appellant's motion for a new trial

was not reversible error, particularly in view of the fact that the court properly instructed the jury to disregard this evidence.

After having carefully considered the testimony and assignments of error argued on appeal, we are of the opinion that there are no reversible errors in the record of this case, and the judgment of the trial court should be, and is, affirmed.

Affirmed.

*Lee, C. J., and Gillespie, Jones and Brady, JJ.,* concur.

---

[1] Slyter v. State, 246 Miss. 402, 149 So. 2d 489 (1963); Walker v. State, 237 Miss. 470, 115 So. 2d 159 (1959); Rose v. State, 222 Miss. 699, 76 So. 2d 835 (1955); McBride v. State, 221 Miss. 508, 73 So. 2d 154 (1954); Brown v. State, 192 Miss. 314, 5 So. 2d 426 (1942); McLemore v. State, 178 Miss. 525, 172 So. 139 (1937); Polk v. State, 167 Miss. 506, 142 So. 480 (1932); Cofer v. State, 158 Miss. 493, 130 So. 511 (1930); Pickett v. State, 155 Miss. 386, 124 So. 364 (1929); Roberts v. State, 153 Miss. 622, 121 So. 279 (1929); Lee v. City of Oxford, 134 Miss. 647, 99 So. 509 (1924). This seems to be the universal rule. See 22A C. J. S. *Criminal Law* § 657 (9) (1961).