300 So.2d 916 (1974)
Calvin EWING
v.
STATE of Mississippi.
No. 48051.
Supreme Court of Mississippi.
September 30, 1974.
Rehearing Denied October 21, 1974.
*918 Mark H. Shenfield, West Point, for appellant.
A.F. Summer, Atty. Gen. by Wayne Snuggs and Charles A. Marx, Sp. Asst. Attys. Gen., Jackson, for appellee.
PATTERSON, Justice:
Calvin Ewing was convicted by the Circuit Court of Monroe County for driving under the influence of intoxicating liquor. He was sentenced to sixty days in jail, fined $300, and his driver's license was revoked for one year. The penalties imposed were authorized by Mississippi Code Annotated section 63-11-33 (1972), entitled Operation of vehicle while under the influence of intoxicating liquor; results of chemical test unavailable.
The points urged for reversal are, (1) unlawful arrest, (2) deprivation of the right to counsel, (3) suppression of evidence favorable to the accused and (4) failure of the arresting officer to inform the appellant of the provisions of the Implied Consent Law.
The substance of the evidence is that the automobile of James Palmer, an off-duty policeman, was forced from the public highway by the erratic driving of another. Palmer alerted the highway patrol and pursued the other automobile along the highway. During this time he observed three other vehicles abandon the highway to avoid a collision with the pursued vehicle.
Palmer was successful in stopping the other automobile in a place of safety off the highway. He testified that when the driver, Ewing, stepped from his vehicle, he had difficulty in standing, his speech was slurred, and he smelled of alcohol. Under these circumstances he requested Ewing to remain with him. Shortly thereafter Patrolman Bryan appeared on the scene.
Bryan described Ewing's condition by stating that he smelled of whiskey and could hardly talk or stand. He arrested Ewing and transported him to the jail in Aberdeen where he was "booked" and confined for driving under the influence of alcohol. At this time, according to Bryan, he advised Ewing of his right to make a telephone call. It is uncontradicted, however, that Ewing was not advised of the Implied Consent Law. In fact, Bryan, the arresting officer, was not qualified to give the intoximeter test nor does the record indicate a person so qualified to have been present. It is also uncontradicted that Ewing did not request a chemical examination of his body for alcoholic content.
Ewing admitted that he had consumed two or three drinks over a two-hour period on an empty stomach, but denied being intoxicated. He testified that he requested permission to make a phone call from the jail, and was advised by the jailer that this could not be done for four or five hours; that he complained of the delay and the jailer responded by spraying him with "Mace" through the bars of his cell.
The jailer testified that Ewing acted like he was drunk and some thirty minutes after he was incarcerated asked to make a phone call, to which he responded by calling Ewing's mother advising that her son was incarcerated. He admitted spraying Ewing with tear gas because he had struck at him through the bars of the cell.
The appellant was convicted in a justice court and appealed to the circuit court where he was again convicted in a trial de novo.
The argument advanced for reversal by reason of the alleged unlawful arrest is that Ewing was deprived of the protection of the Fourth Amendment to the United States Constitution and Section 23, Article 3, of the Mississippi Constitution (1890) *919 inasmuch as the arrest was for a misdemeanor not committed in the presence of the arresting officer. Polk v. State, 167 Miss. 506, 142 So. 480 (1932), and Orick v. State, 140 Miss. 184, 105 So. 465 (1925). Therefore, all testimony subsequent to the attempted arrest was the fruit of an unlawful arrest and inadmissible as such. This contention, however, disregards the testimony of Bryan that he observed Ewing in the presence of Palmer and that he could hardly stand or talk and smelled of alcohol when arrested.
It was held in Kelly v. Yearwood, 204 Miss. 181, 37 So.2d 174 (1948), that the arrest of a person under the influence of intoxicants on a public highway was proper under the statute denouncing drunkenness in a public place since there were several witnesses present. Ewing's actions and demeanor in the presence of Officers Bryan and Palmer were indicative of intoxication in violation of Mississippi Code Annotated section 97-29-47 (1972), a misdemeanor, providing probable cause, indeed the requirement of public protection, for Ewing's arrest. Under this circumstance we find no constitutional impediment to the introduction of testimony relative to the arrest and subsequent events even though the officer's ticket indicated the arrest was for driving under the influence.
The appellant projects the United States Constitution's Sixth Amendment right to counsel during or immediately after being booked into jail as a reason for reversal. He does so by insisting that the language of this Court in Scarborough v. State, 261 So.2d 475 (Miss. 1972), mandates the right to counsel at this "critical stage" of the proceedings. We there stated:
... The critical stage in proceedings against anyone charged with intoxication, is immediately after the arrest. To limit such a person's access to an attorney or friends until after a certain number of hours have passed is in effect denying him effective means to prepare a defense. 261 So.2d at 477.
A cursory review of this case reveals that it was addressed to the practice, which was condemned, of holding intoxicants over a period of time while denying their requests to see either a lawyer or friend until a state of sobriety had been achieved by the passage of time.[1] The opportunity was thus denied an accused during this transitory and critical period to secure the best evidence of his intoxication, or the lack of it, through a chemical test of his blood. The limitation of access, tantamount to the suppression of evidence, was that which we condemned and not the absence of an attorney.
We find no legal discord between Scarborough, supra, and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and its spawn. The similarity of language, "critical stage," in an opinion does not necessarily bring the opinion within the ambit of cases arising from different circumstances. The language of the Sixth Amendment right to counsel pronounced in Gideon, supra, and Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed. 530 (1972), and the numerous cases between the two, does not encompass fact, circumstances or legal theory parallel to those of this record. We therefore conclude that Ewing's right-to-counsel argument is without substantial merit, and particularly so when it is noted that he neither requested an attorney or a chemical analysis of his blood though he was advised of his right to make a telephone call. Cf. Capler v. State, 207 So.2d 339 (Miss. 1968).
We think the third theory advanced for reversal is without merit. It suggests error *920 by the lower court in overruling a motion for discovery by which Ewing sought to inspect the county jail records to secure the names of inmates at the time of his incarceration so that they might testify in his behalf. The denial is urged as depriving him of effective means to prepare his defense. We held in Peterson v. State, 242 So.2d 420 (Miss. 1970), and Armstrong v. State, 214 So.2d 589 (Miss. 1968), the adjudication of such motions is within the sound discretion of the trial court.
In considering whether there was an abuse of discretion, we note the absence of allegation denying access to the jail records, and observe they are public records as available to the defendant as to the state. These circumstances, in our opinion, are not indicative of an abuse of discretion, requiring reversal, but rather strongly suggest that the trial court properly overruled the motion.
Finally, Ewing contends that Mississippi Code Annotated Title 63, Chapter 11 (1972), Implied Consent Law, obligated the arresting officer to advise him of his privilege to undergo a chemical test for the determination of the alcoholic content of his blood and this failure bars his prosecution. The question has not previously received the Court's consideration, but from our study of the applicable statutes we conclude they do not mandate the arresting officer to inform a suspect of the Implied Consent Law.
We are of the opinion the legislative intent in Chapter 11 was to augment the existing methods of determining intoxication by providing a means designed to produce the best evidence relevant to its degree. The language of Mississippi Code Annotated section 63-11-5 (1972) from which it is argued the arresting officer is mandated to inform the suspect of his privileges under Chapter 11, provides:
At the time of such arrest, if the arresting officer has reasonable grounds and probable cause to believe such person to have been driving a motor vehicle upon the public highways, public roads and streets of this state while under the influence of intoxicating liquor, such officer shall inform such person that his failure to submit to such a chemical test or tests will result in the suspension of his privilege to operate a motor vehicle upon the public streets and highways of this state for a period of ninety days. Anyone arrested under the provisions of this chapter shall be informed immediately after being booked that he has the right to telephone for the purpose of requesting legal or medical assistance. (Emphasis added.)
The theme of the contention stems from the words "such officer shall inform such person" and moves to the connotation of the word "shall," citing Murphy v. State, 253 Miss. 644, 178 So.2d 692 (1965), and State ex rel. Cowan v. State Highway Commission, 195 Miss. 657, 13 So.2d 614 (1943), wherein we construed it to be mandatory. It logically follows, it is argued, that to give effect to the mandatory construction of "shall" we must read into the statute the requirement of advising a suspect of the provisions of the Implied Consent Law.
These are persuasive ideas, but they depend upon an isolated view of the section and overlook the substance of the general rules relating to the construction of statutes. In Aikerson v. State, 274 So.2d 124 (Miss. 1973), we held that this Court in construing statutes not only interprets the words used, but also considers the purpose and policy which the legislature had in view by its enactment and, having done so, will then give effect to the intent of the legislature. We also held that an unjust or unwise intention will not be imputed to the legislature by the words of a statute when other reasonable construction can save it from this imputation. Aikerson, supra, and Gambrill v. Gulf States Creosoting Co., 216 Miss. 505, 62 So.2d 772 (1953).
The overall intent of the legislature in enacting Chapter 11 is apparent. It was to *921 diminish the perils resulting from drunken driving, provide the best evidence of intoxication, encourage the use of intoximeters by the public and comply with the Federal Highway Safety Act of 1966.[2] The intention of the legislature concerning the requirements of the act necessary to its implementation is more elusive and must be determined, we think, from the purpose and policy of the legislature as a supplement to the language of the statutes.
We therefore judicially notice that some arresting officers do not possess the skill to administer an unofficial "on-the-spot" breath test to ascertain if a driver's breath contains alcohol before an official analysis is made. We notice also the instruments for an analysis are not always readily available to officers in all locations throughout the state. Moreover, by the language of the statute, a suspect has the right to refuse, subject to penalties, the breath test. These limitations constitute a curtailment to prompt implementation of the Implied Consent Law which we believe were not unnoticed by the legislature in its wisdom.
The legislature acknowledged the limitations by providing a means for the instruction of officers in the use of intoximeters and for the purchase of the testing devices. It also retained an alternative method for the enforcement of the state's intoxication laws by enacting Section 63-11-39(2), which follows:
No provisions of this chapter shall be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the person was under the influence of intoxicating liquor.
We interpret the above language, when considered in conjunction with the other sections of the Implied Consent Law and the overall purpose of the legislature, to negate a mandatory requirement of advising of the existence of such law. If the legislature had so intended, it would have been an easy matter for it to have so stated.
To opine otherwise would impute to the legislature the unwise intent of permitting the driving-under-the-influence laws to become impossible of enforcement during the implementation of the Implied Consent Law; whereas, we think its purpose was to strengthen these laws for the protection of the public. The incongruity of the argument may be emphasized by pointing out the impracticality of mandating an arresting officer to advise a suspect of the Implied Consent Law when he had neither the skill nor the instruments to give the test in the event it was not refused by the suspect.
Lacking state precedent, we look to the decisions of other states where the problem has been presented. We find the cases of State v. Barry, 183 Kan. 792, 332 P.2d 549 (1958), State v. Reyna, 92 Idaho 669, 448 P.2d 762 (1968), and People v. Alford, 8 Mich. App. 211, 154 N.W.2d 48 (1967), to be persuasive. In Barry the Supreme Court of Kansas, in construing language similar to that of our Implied Consent Law, stated:
We find nothing in the foregoing enactments to evidence legislative intent requiring that the chemical tests therein authorized must be offered, given or refused in every case where an arresting officer apprehends the driver of a motor vehicle on a charge of operating that vehicle while under the influence of intoxicating liquor. Moreover when they are reviewed in their entirety, and examined in the light of the purposes for which they were enacted, along with matters of common knowledge of which we take judicial notice, we are convinced their terms are not to be construed as contemplating or requiring that provisions thereof, authorizing the giving of chemical *922 tests, be regarded as mandatory or that the giving of such tests, absent refusal to submit thereto, is prerequisite to a prosecution for, and valid conviction of, the offense of driving a motor vehicle while under the influence of intoxicating liquor, contrary to the provisions of 8-530, supra. With such enactments construed as just indicated appellant's claims of error in refusing his requested instruction and in denying his motion to dismiss the action and discharge him from custody lack merit and cannot be upheld. 183 Kan. at 798, 332 P.2d at 554.
In Reyna the highest court of Idaho held, under similar circumstances, that its implied consent law was not mandatory. It held that the state may not suppress evidence, but it need not gather evidence for the accused.
In Alford, although the statute was somewhat different from ours, the Court of Appeals of Michigan rejected the defendant's theory that the failure to advise of the chemical test deprived him of a right which required reversal. The Court suggested that where no test was given a suspect, there was no requirement to advise of his right thereto.
From our rules of construction and the above cases we conclude that Title 63, Chapter 11, Implied Consent Law, does not mandate an arresting officer to advise a suspect of the law's existence.
Finally, it is contended that an arresting officer, by advising a suspect of the law or withholding the advice from him, has within his power the means of fostering inequality under the law since there is a variance in the punishments permitted by the new law and its alternative. We reject this argument since we are unable to discern an evidentiary pattern of unequal enforcement of the law as suggested.
Affirmed.
All Justices concur.
NOTES
[1] The denial of the right to make a phone call we believe has been alleviated by that which was stated in Scarborough, supra, and more recently in Mississippi Code Annotated section 63-11-5 (1972), "... Anyone arrested under the provisions of this chapter shall be informed immediately after being booked that he has the right to telephone for the purpose of requesting legal or medical assistance."
[2] The Highway Safety Act of 1966 authorizes the Secretary of Transportation to withhold up to 10% of a state's federal highway funds if the state does not comply with the federal safety standards pursuant to the act.