841 So.2d 1163 (2003)
Marshall LANE, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01820-COA.
Court of Appeals of Mississippi.
February 4, 2003.
Rehearing Denied April 8, 2003.
*1164 John R. McNeal Jr., Jackson, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before McMILLIN, C.J., THOMAS, and CHANDLER, JJ.
THOMAS, J., for the court.
¶ 1. Marshall Lane, Jr. was convicted of shooting into a dwelling and was sentenced to serve a term of ten years in the custody of the Mississippi Department of Corrections and pay all court costs, statutory fees, and assessments in the amount of $623. Aggrieved, he asserts the following issues:
I. THE TRIAL COURT ERRED IN ITS RULING ON LANE'S MOTION *1165 IN LIMINE WHICH SERVED TO DENY LANE HIS RIGHT TO TESTIFY.
II. THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF DEPUTY WYMAN CONCERNING MATTERS THAT SHOULD BE STRICTLY RESERVED FOR EXPERTS.
III. THE TRIAL COURT ERRED IN DENYING TO DECLARE A MISTRIAL AFTER STATE'S WITNESS GLORIA STATON TESTIFIED CONTRARY TO COURT'S RULING ON LANE'S MOTION IN LIMINE AND FURTHER ERRED IN FAILING TO INSTRUCT THE JURY TO DISREGARD MS. STATON'S TESTIMONY SO AS TO MINIMIZE PREJUDICE.
IV. THE TRIAL COURT ERRED IN NOT GRANTING LANE'S MOTION FOR DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE, HIS MOTION FOR JNOV, OR IN THE ALTERNATIVE, NEW TRIAL AT THE END OF LANE'S CASE, AND IN FAILING TO GRANT LANE A PEREMPTORY INSTRUCTION.
Finding no error, we affirm.

FACTS
¶ 2. On November 15, 1999, Candie Staton was in the kitchen of the house owned by her mother, Gloria, and in which she lived along with her son, her mother, her brothers, and her grandfather. Candie Staton testified that sometime after sunset the lights in the house went out. She then saw the appellant, Marshall Lane, run past the window in the kitchen. Candie attempted to use the phone but the line was dead. She gathered her family together because they were afraid, and she testified that a gunshot was heard along with the sound of breaking glass. When another gunshot sounded like it was at the back of the house, Candie and her family all ran out the front of the house to a neighbor's home. Candie's eighteen year old brother, James, testified that when leaving the yard he saw Marshall Lane at the back of the house.
¶ 3. Madison County Deputy Cline Wyman arrived at the Staton home shortly after 6 p.m. Wyman testified that he found blast holes in two different windows on the house with glass on the floor inside, a damaged light fixture in the home, and what appeared to be wadding from a small gauge shotgun inside the home. Wyman found the power to be off at the house and the telephone line cut. Lane objected to Wyman's testimony about the shotgun wad and that it was part of a shotgun shell, asserting that Wyman was not qualified as an expert witness on firearms and ammunition. The trial judge overruled this objection based on the grounds that Wyman was testifying as to what he had observed at the house. No more evidence was collected from the scene because the house burned later that night, destroying all of the evidence.
¶ 4. Lane did not testify in his own defense, but his mother did testify that he had been drinking and that she had instructed him to go to bed. Although she was not home at the time of the alleged shooting, she testified that Lane's car was inoperable and that he would not have had any way to get to the Staton home which was eight miles away. In rebuttal, the State called Diane Johnson who testified that she saw Lane at her store in Jackson on the day of the shooting, over twenty miles from Lane's mother's house.
¶ 5. James and Gloria Staton were also called in rebuttal. James Staton testified *1166 that he saw Lane driving his car on the day of the shooting. Gloria Staton also testified to seeing Lane in his car on the day of the shooting, when he came to her house earlier that day. On cross-examination, defense counsel asked Staton how long Lane was at her house, and she responded that it was not long and that Lane attacked her. Lane had been convicted of an assault on Gloria Staton that occurred on the morning of the shooting and the defense moved for a mistrial due to the testimony of Staton and her reference to previous bad acts. The trial court denied the motion for mistrial.
¶ 6. At the close of trial, the jury found Lane guilty of shooting into a dwelling and he was sentenced to ten years in the custody of the Mississippi Department of Corrections and to pay all court costs, statutory fees, and assessments in the amount of $623. Lane moved for a JNOV or a new trial and a hearing was held. At this hearing, Lane argued for the first time that he was denied the right to testify because of the trial court's ruling under M.R.E. 609 regarding his motion in limine. After hearing from both the defense and the prosecution, the trial court denied Lane's motion.

ANALYSIS
I. DID THE TRIAL COURT ERR IN ITS RULING ON LANE'S MOTION IN LIMINE AND DID IT SERVE TO DENY LANE HIS RIGHT TO TESTIFY?
¶ 7. Lane argues that the trial court erred in its ruling on his motion in limine where the trial court informed Lane that the prosecution would be able to question him about any felony record during the last ten years if he chose to testify. Lane asserts that the trial court should have informed him that the other convictions could not have been used against him unless they were determined more relevant than prejudicial under the five factors set forth in Peterson v. State, 518 So.2d 632, 636 (Miss.1987). By not informing him of the State's burden, Lane claims that his ability to defend himself was hampered due to an altered trial strategy and the inability to advance his own defense by not taking the stand.
¶ 8. The State points this Court to the record, where Lane failed to make a contemporaneous objection. An issue is waived on appeal where there was no contemporaneous objection. Russell v. State, 607 So.2d 1107, 1117 (Miss.1992). Our supreme court has held that in such a case to properly preserve the issue for appellate review the defendant must preserve for the record "substantial and detailed evidence of the testimony he would have given." Heidelberg v. State, 584 So.2d 393, 395 (Miss.1991) (quoting Saucier v. State, 562 So.2d 1238, 1245 (Miss.1990)) (overruled on other grounds). Lane failed to proffer anything evidencing his testimony. Therefore, he has failed to properly preserve this issue for appeal.
¶ 9. The procedural bar notwithstanding, Lane's argument is still without merit. The record includes no indications that Lane wanted to testify. Lane had an extensive criminal record, and he did choose to provide a defense in the form of the alibi testimony of his mother. This case is similar to Walker v. State, 823 So.2d 557, 561(¶ 6) (Miss.Ct.App.2002), wherein this Court held that there was no suggestion in the record that Walker indicated a desire to testify and there was nothing to support his claim to have been denied the right to testify. This issue is without merit.
II. DID THE TRIAL COURT ERR IN ALLOWING THE TESTIMONY OF DEPUTY WYMAN AND *1167 SHOULD HIS TESTIMONY BE STRICTLY RESERVED FOR AN EXPERT?
¶ 10. Lane argues that the trial court erred in allowing Deputy Wyman to testify about the items he found inside the Staton home. Wyman testified regarding shotgun wads found inside the Staton home, and Lane made an objection which was overruled by the trial judge. Lane argues that Wyman was not qualified as an expert under M.R.E. 702 and should not have been allowed to testify about the wads.
¶ 11. For lay witness opinion testimony of an ultimate fact to be admissible, it must pass a two part test under M.R.E. 701 and M.R.E. 602. The matter testified to must be within the witness' personal knowledge, and the testimony must be helpful to the trier of fact in resolving the issue. Bower v. Bower, 758 So.2d 405, 413(¶ 37) (Miss.2000); Jones v. State, 678 So.2d 707, 710 (Miss.1996). A trial judge enjoys a considerable amount of discretion as to the relevancy and admissibility of evidence. Unless his judicial discretion is so abused as to be prejudicial to the accused, this Court will not reverse his ruling. Shearer v. State, 423 So.2d 824, 826 (Miss.1982) (citing Page v. State, 295 So.2d 279 (Miss.1974)).
¶ 12. Wyman was allowed to testify to what he observed at the scene of the shooting. During his testimony, he stated unequivocally that he was not an expert although he had been around guns and hunting all of his life. Wyman testified that wads were part of the components which make up a shotgun shell, and that he found several inside the Staton home. Wyman further testified that the wads were small, and based on this observance they were probably from a .410 gauge shotgun. Wyman refused to testify regarding how far shotgun wadding normally travels, stating that he did not know and was not an expert on the subject.
¶ 13. The test to determine whether the opinion of a witness constitutes expert opinion testimony rather than lay opinion testimony is whether the witness possesses some experience or expertise beyond that of the average, randomly selected adult. Sample v. State, 643 So.2d 524, 529 (Miss.1994). Wyman testified about what he observed at the scene, including small plastic wads found within the Staton home. He did not have to be an expert in the field of shotgun shell construction to recognize the wad, or to testify that it was small and in his opinion came from a .410 gauge. "Before error can be predicated at all upon an adverse evidentiary ruling, it must appear that a substantial right of the party is affected." Jackson v. State, 594 So.2d 20, 25 (Miss.1992). The conclusion about the type of shotgun that fired the pellets entering the Staton home was not a matter of ultimate fact for the jury.
¶ 14. This issue is without merit.
III. DID THE TRIAL COURT ERR IN DENYING TO DECLARE A MISTRIAL AFTER STATE'S WITNESS GLORIA STATON TESTIFIED CONTRARY TO THE COURT'S RULING ON LANE'S MOTION IN LIMINE AND DID THE COURT FURTHER ERR IN FAILING TO INSTRUCT THE JURY TO DISREGARD MS. STATON'S TESTIMONY SO AS TO MINIMIZE PREJUDICE?
¶ 15. Lane asserts that the trial court erred in refusing to declare a mistrial after the State's witness, Gloria Staton, testified that Lane had attacked her earlier on the day that the shots were fired into her house. Lane argues that Staton's testimony was in violation of the trial court's *1168 ruling on Lane's motion in limine and that it seriously prejudiced his defense. The record reflects that Gloria Staton, along with other witnesses, were called in rebuttal in response to Lane's attempt to establish an alibi through his mother's testimony. Lane's mother testified that Lane had been drinking and that his car did not work when she left him at her house on the evening the shooting occurred. The witnesses called in rebuttal by the State testified that they had seen Lane on the day of the shooting driving his car which was allegedly not working.
¶ 16. The State proffered that Gloria Staton would have testified that Lane had attacked her on the day of the shooting, for which he was later prosecuted and convicted. Although the State felt this would provide motive for the shooting into the house, the trial court did not allow this testimony into evidence. Lane now questions the testimony by Gloria Staton which arose on cross-examination. When asked how long Lane had been at her residence, the following exchange occurred:
Answer: Not long, because I went up to the car and he jumped out of his car and was about to attack me.
Question: All I, ma'am, Your Honor, I move to strike this. This is totally irrelevant. I just merely asked her how long he was there.
Answer: Well, I was just giving you an idea of how long it took him to go.
The Court: Wait just a second. She can explain her answer if she needs to.
Question: I was just asking her approximately how long he was there. Either she knows or she doesn't know.
The Court: I can't control what her answer is.
Question: Was he there five minutes, ten minutes, fifteen minutes, twenty minutes?
Answer: Well ...
Question: To your best estimate.
Answer: Huh?.
Question: To your best estimate.
Answer: Well, let's see, after he got out of the car and attacked me, about fifteen minutes.
¶ 17. At this point, Lane's counsel moved for mistrial and the trial court had the jury exit the courtroom. Lane argued that Staton's testimony violated the motion in limine and requested a mistrial. The trial court held that the ruling made on the motion in limine was regarding the State's ability to bring evidence forth, and that the witness had the ability to explain her answer and was relating the amount of time to what occurred while Lane was there. The trial court then cautioned the witness not to testify any further as to other possible criminal acts or charges before allowing the jury back in to continue the trial. The trial court did not instruct the jury to disregard Staton's testimony, which Lane asserts was also error. It is noted, however, that Lane did not request the trial court to make such an instruction.
¶ 18. "Case law unequivocally holds that the trial judge `is in the best position for determining the prejudicial effect' of an objectionable comment." Alexander v. State, 602 So.2d 1180, 1182 (Miss. 1992). The trial judge is vested with discretion to determine whether a comment is so prejudicial that a mistrial should be declared. Edmond v. State, 312 So.2d 702, 705 (Miss.1975). The trial court ruled that Gloria Staton's testimony was responsive to the question that was asked. Staton's estimate of how long Lane was at her residence was based upon her memory of the events that occurred while he was there. Lane's conviction for this attack was not mentioned before the jury. The jury was admonished in jury instructions *1169 to disregard any comments which were not supported by the evidence or did not have any basis in the evidence.
¶ 19. Our supreme court has held that a defendant cannot complain of evidence that he himself introduces by virtue of his own questions. Hobson v. State, 730 So.2d 20, 24-25(¶ 15) (Miss.1998). Objectionable statements are not error if they are the product of direct and cross-examinations by the defense counsel. Fleming v. State, 604 So.2d 280, 289 (Miss.1992) (citing Shannon v. State, 321 So.2d 1, 2 (Miss.1975)). Although Staton was the State's witness, she was on cross-examination when the testimony of which Lane complains arose. The trial judge did not abuse his discretion in ruling that Staton's answer was responsive to the question and denying a mistrial.
¶ 20. This issue is without merit.
IV. DID THE TRIAL COURT ERR IN NOT GRANTING LANE'S MOTION FOR DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE, HIS MOTION FOR JNOV, OR IN THE ALTERNATIVE, NEW TRIAL AT THE END OF LANE'S CASE, AND IN FAILING TO GRANT LANE A PEREMPTORY INSTRUCTION?
¶ 21. Lane asserts that the trial court erred in failing to grant his motion for directed verdict, JNOV, new trial, and for a peremptory instruction. Lane argues both that there was insufficient evidence for the jury to convict him of firing into an occupied dwelling and that the jury verdict was against the overwhelming weight of the evidence. A motion for a directed verdict, request for peremptory instruction, and motion for judgment notwithstanding the verdict all challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). "Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court." Id. This occurred when the lower court denied the motion for JNOV. Wetz v. State, 503 So.2d 803, 807-8 (Miss.1987).
¶ 22. "If there is sufficient evidence to support a verdict of guilty, this Court will not reverse." Meshell v. State, 506 So.2d 989, 990 (Miss.1987). See also Haymond v. State, 478 So.2d 297, 300 (Miss.1985); Fairley v. State, 467 So.2d 894, 902 (Miss. 1985). This Court should reverse only where, "with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty." Alexander v. State, 759 So.2d 411, 421(¶ 23) (Miss.2000) (quoting Gossett v. State, 660 So.2d 1285, 1293 (Miss.1995)). It is the jury's duty to resolve conflicts in testimony. Groseclose v. State, 440 So.2d 297, 300 (Miss.1983).
¶ 23. A motion for new trial challenges the weight of the evidence. McClain, 625 So.2d at 781. The standard of review in determining whether a jury verdict is against the overwhelming weight of the evidence is also well settled. "[T]his Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Collins v. State, 757 So.2d 335, 337(¶ 5) (Miss.Ct.App.2000) (quoting Dudley v. State, 719 So.2d 180, 182(¶ 9) (Miss.1998)). On review, the State is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." Collins, 757 So.2d at 337(¶ 5) (citing Griffin v. State, 607 So.2d 1197, 1201 (Miss.1992)). "Only in those cases where the verdict is so contrary to the overwhelming *1170 weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Collins, 757 So.2d at 337(¶5) (quoting Dudley, 719 So.2d at 182).
¶ 24. In Lane's trial, the jury heard evidence from eyewitnesses who placed him outside of the Staton home before and after the shots were fired. Candie Staton testified to seeing Lane outside the kitchen window before the lights and phone went out, immediately before shots were fired into the house. James Staton testified to seeing Lane at the rear of the house when the family fled from the house after the shots had been fired. Both Candie and James knew Lane well, and testified that they were certain of their identification of him. Lane supplied alibi testimony which was rebutted by several witnesses who testified to seeing Lane driving his allegedly broken car on the day of the shooting.
¶ 25. The trial court was correct in denying Lane's motion for JNOV and allowing the jury to decide the case. The evidence was sufficient to support a guilty verdict, based on the eyewitness testimony and the totality of the evidence presented at trial. Similarly, the trial court was within its discretion in denying Lane's motion for new trial. The jury verdict of guilty was not against the overwhelming weight of the evidence.
¶ 26. This issue is without merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF SHOOTING INTO A DWELLING AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR. GRIFFIS, NOT PARTICIPATING.