# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01801-COA

ARCHIE L. JOHNSON A/K/A ARCHIE                           APPELLANT
JOHNSON A/K/A ARCHIE LEE JOHNSON
A/K/A ARCHIE LEVELL

v.

STATE OF MISSISSIPPI                                      APPELLEE

DATE OF JUDGMENT:            11/07/2019
TRIAL JUDGE:                 HON. ADRIENNE ANNETT HOOPER-
                             WOOTEN
COURT FROM WHICH APPEALED:   HINDS COUNTY CIRCUIT COURT,
                             FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                             BY: MOLLIE MARIE McMILLIN
                             ARCHIE L. JOHNSON (PRO SE)
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: ALLISON KAY HARTMAN
DISTRICT ATTORNEY:           JODY EDWARD OWENS II
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 08/10/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE WILSON, P.J., GREENLEE AND WESTBROOKS, JJ.

## GREENLEE, J., FOR THE COURT:

¶1.     Archie Johnson was convicted of kidnapping and sentenced as a violent habitual offender to life in the custody of the Mississippi Department of Corrections (MDOC). Subsequently, Johnson's appellate counsel filed a brief in compliance with *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005), certifying to this Court that the record presented no arguable issues for appeal.  Then Johnson filed a pro se supplemental brief and a brief addendum

claiming (1) the trial court erred by denying his motion for a directed verdict, (2) a DNA sample should not have been admitted into evidence because it was obtained in violation of his Sixth Amendment right to counsel, (3) the court erred by sentencing him as a violent habitual offender, (4) he should have been granted a mistrial, and (5) the charging affidavit and indictment were illegal. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In February 2017, Johnson was indicted for one count of kidnapping. Two years later, in February 2019, the State filed a motion to amend the indictment to charge Johnson as a violent habitual offender. The court entered an order amending the indictment in March 2019.[1]

¶3. In November 2019, a trial was held. At trial, Officer Julian Lonnie with the Jackson Police Department (JPD) testified that on June 4, 2016, Aldora Williams reported that two days earlier on June 2, 2016, she had been assaulted and held against her will for approximately twelve hours at her home in Jackson, Mississippi. During the investigation, Officer Lonnie learned that Williams had been sitting on her porch when an African American male asked her for some water. When Williams went inside to get the water, the man pushed her inside the house and locked the door. Then the man showed her his penis and indicated that he wanted to have sex with her. When Williams refused, the man threatened to stab her in the neck with an ice pick and punched her in the head. Officer Lonnie testified that Williams appeared to have some bruising. According to Officer Lonnie,

_____

[1] In October 2019, the State filed another motion to amend the date of the alleged crime in the indictment, and the court granted the motion.

Williams did not know the suspect's name but described him as a forty-seven to fifty-year-old "dark-skinned black male" who was approximately 5 feet and 6 or 7 inches tall and weighed about 145 pounds.

¶4.     Jasmine Haynes, a detective with JPD, testified that she interviewed Williams on June 6, 2016.  Detective Haynes' investigation revealed that Williams was sitting on her porch when an African American male approached her and asked her for water.  When she went inside, he forced his way into her house and held her against her will for approximately twelve hours.  She was threatened with an ice pick and physically beaten.  According to Detective Haynes, Williams did not know the suspect's name but had seen him in some red, abandoned houses on Bailey Avenue.  Detective Haynes went to the location and spoke with the landlord, who stated that Johnson lived in one of the houses despite having been asked to leave several times.  On June 23, 2016, Detective Haynes presented a photo lineup to Williams.  According to Detective Haynes, Williams circled Johnson's photo and wrote, "This is the man that held me against my will in my own home and attempted to rape me. He also beat me in the head with his fist and threatened to stab me with an ice pick."

¶5.     In October 2018, Detective Haynes obtained a warrant and collected a DNA sample from Johnson.[2]  Detective Haynes requested that the Mississippi Forensics Laboratory compare Johnson's known DNA sample with DNA found on cigarette butts that were retrieved from an ashtray in Williams' living room.  Joseph Heflin, a forensic biologist with the Mississippi Forensics Laboratory, testified as an expert in the field of DNA analysis.

---

[2] The warrant was admitted into evidence at trial.

3

According to Heflin, unless Johnson had an identical twin, the DNA on at least one cigarette butt belonged to him.

¶6. Williams, who was seventy-eight years old at the time of trial, testified that she was on her porch when a man approached her and pushed her inside her house. She testified that the man was there for approximately twelve hours, and she did not feel like she could leave.[3] According to Williams, the man hit her and held an ice pick and knife to her neck. Williams identified Johnson in the courtroom as the man who approached her on June 2, 2016.

¶7. After the State rested its case, the defense moved for a directed verdict. The trial court denied the motion, and the defense rested without calling any witnesses. After the jury considered the evidence presented at trial, Johnson was convicted of kidnapping.

¶8. At the sentencing hearing, Marilyn Smith Hilcott—the chief records officer for the MDOC—testified as to Johnson's prior convictions. Ultimately, the court sentenced Johnson, as a violent habitual offender, to life in the custody of the MDOC.

## DISCUSSION

¶9. In *Lindsey*, our supreme court adopted a procedure "to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal[.]" *Lindsey*, 939 So. 2d at 748 (¶18). First, "[c]ounsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-[(5), (8)]." *Id.* In the brief,

> counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record

---

[3] Williams testified that the man took her phone from her.

4

thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

*Id.* Next, counsel must forward a copy of the brief to the client, informing the client that counsel was unable to discover any arguable issues in the record and advising the client that he or she has a right to file a pro se brief. *Id.*

¶10. Johnson's appellate counsel submitted a brief in compliance with *Lindsey*. Johnson then filed a pro se supplemental brief and a brief addendum, asserting the following assignments of error: (1) the trial court erred by denying his motion for a directed verdict, (2) his DNA sample should not have been admitted into evidence because it was obtained in violation of his Sixth Amendment right to counsel, (3) the court erred by sentencing him as a violent habitual offender, (4) he should have been granted a mistrial, and (5) the charging affidavit and indictment were illegal.

### I. Whether the trial court erred by denying Johnson's motion for a directed verdict.

¶11. Johnson claims that the court erred by denying his motion for a directed verdict. Specifically, Johnson claims that the State failed to prove that he removed Williams from her home.

¶12. "A motion for a directed verdict, request for peremptory instruction, and motion for judgment notwithstanding the verdict all challenge the legal sufficiency of the evidence." *Lane v. State*, 841 So. 2d 1163, 1169 (¶21) (Miss. Ct. App. 2003) (citing *McClain v. State*,

5

625 So. 2d 774, 778 (Miss. 1993)). "Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court." *Id*. Johnson moved for a directed verdict after the State rested its case. The court denied the motion, and the defense rested without presenting any evidence. Then the court denied Johnson's request for a peremptory instruction and later denied his motion for judgment notwithstanding the verdict or, in the alternative, a new trial.

¶13. "When reviewing a challenge to the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Kidd v. State*, 284 So. 3d 777, 783 (¶20) (Miss. Ct. App. 2019) (quoting *Reynolds v. State*, 227 So. 3d 428, 436 (¶32) (Miss. Ct. App. 2017)).

¶14. The crime of kidnapping is committed whenever "[a]ny person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will . . . ." Miss. Code Ann. § 97-3-53 (Rev. 2014). The State was not required to prove that Johnson removed Williams from her home.

¶15. At trial, the State presented evidence that Johnson approached Williams and asked her for some water. When Williams went to get the water, Johnson pushed her inside the house and locked the door. Then Johnson showed Williams his penis and indicated that he wanted to have sex with her. When Williams refused, Johnson threatened her with an ice pick and punched her in the head. Williams testified that Johnson was there for approximately twelve

hours, and she did not feel like she could leave.

¶16.    When viewing the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient to find Johnson guilty of kidnapping.  This issue is without merit.

**II.    Whether Johnson's DNA sample was inadmissible because it was obtained in violation of his Sixth Amendment right to counsel.**

¶17.    Johnson seemingly claims that the court erred by admitting his DNA sample into evidence because it was obtained in violation of his Sixth Amendment right to counsel.  At trial, the buccal swab was not admitted into evidence.  However, the forensic biologist who compared the known sample of Johnson's DNA to the DNA from the cigarette butts that were found in Williams' living room testified that unless Johnson had an identical twin, the DNA on at least one cigarette butt was his.

¶18.    This Court has held that "[o]bjections to the admissibility of identification evidence should be made in a motion to suppress." *Demorst v. State*, 228 So. 3d 323, 328 (¶10) (Miss. Ct. App. 2017).  "Motions to suppress evidence are generally required to be made [before] trial, and the failure to do so without good cause has been held to be not only a procedural bar, but a waiver of the issue precluding even plain error review." *Id*.  Additionally, "failure to lodge a contemporaneous objection to the admission of evidence [generally] waives the issue on appeal." *Dickerson v. State*, 175 So. 3d 8, 22-23 (¶50) (Miss. 2015).  Johnson did not file a motion to suppress, nor did he argue at trial that the sample was obtained in violation of his Sixth Amendment right to counsel.  Therefore, he is procedurally barred from raising the issue.  Notwithstanding the procedural bar, this issue is without merit.

¶19.    Under both the United States and the Mississippi constitutions, an accused is entitled

7

to be assisted by counsel during criminal proceedings instituted against him. *See* U.S. Const. amend. VI; Miss. Const. art. III, § 26. "The sixth amendment right to counsel attaches once the State begins criminal proceedings by any means." *Ormond v. State*, 599 So. 2d 951, 956 (Miss. 1992). "At a pretrial proceeding, however, the law requires presence of counsel only if the proceeding constitutes a critical stage." *Id*. "A critical stage arises at any confrontation in which the results might affect the course of the later trial and in which the presence of counsel might avert prejudice at trial." *Id*.

¶20.    The State concedes that Johnson's right to counsel had already attached when his DNA was obtained but asserts that it was not taken during a critical stage of the proceedings. While it does not appear that this Court has addressed this specific issue, similar issues have been addressed regarding when the right to counsel attaches. Our supreme court has held that "scientific analysis of fingerprints, blood samples, hair and clothing" are non-critical stages. *Burns v. State*, 729 So. 2d 203, 217 (¶59) (Miss. 1998), *abrogated on other grounds by Pitchford v. State*, 45 So. 3d 216, 246 (¶125) (Miss. 2010); *see, e.g.*, *Magee v. State*, 542 So. 2d 228, 233 (Miss. 1989) (photographic lineup not critical stage); *Newton v. State*, 321 So. 2d 298, 300 (Miss. 1975) (fingerprinting not critical stage); *Ewing v. State*, 300 So. 2d 916, 919 (Miss. 1974) (chemical test for intoxication not critical stage).

¶21.    In *Ormond v. State*, 599 So. 2d 951 (Miss. 1992), the appellant argued that he was entitled to his Sixth Amendment right to counsel during a gonorrhea smear test performed pursuant to a search warrant. *Id*. at 956. Our supreme court held that the swab emission test did not constitute a critical stage, and therefore, there was no right to counsel during those

8

proceedings. *Id*. at 957. While quoting *McClain v. State*, 410 N.E.2d 1297, 1302-03 (Ind. 1980), the supreme court explained, "Had [the] appellant been subjected to interrogation after his arrest, he would clearly have had the right to the presence and advice of counsel." *Ormond*, 599 So. 2d at 956. "The right to counsel at such point is available as a safeguard for the privilege against self-incrimination." *Id*. at 956-57. However the test did "not involve attempts to get testimony or assertions from the person examined," and therefore, "there is no[] need for counsel to be present to protect that privilege." *Id*. at 957.

¶22. "*Ormond* dictates that as long as there is an opportunity for counsel to cross-examine at trial or otherwise confront witnesses, there is no constitutional violation for not having counsel present during non-critical stages." *Burns*, 729 So. 2d at 217 (¶60). At trial, Johnson's attorney had the opportunity to, and did, cross-examine the detective who obtained Johnson's DNA and the forensic biologist who tested the DNA sample. For these reasons, Johnson did not suffer a Sixth Amendment constitutional violation.

### III. Whether the court erred by sentencing Johnson as a violent habitual offender.

¶23. Johnson claims the court erred by sentencing him as a violent habitual offender. "In order to sentence a defendant as a habitual offender, the accused must be properly indicted as a habitual offender, the prosecution must 'prove the prior offenses by competent evidence,' and the defendant must 'be given a reasonable opportunity to challenge the prosecutor's proof.'" *Hughes v. State*, 291 So. 3d 792, 798 (¶13) (Miss. Ct. App. 2020) (quoting *Hull v. State*, 174 So. 3d 887, 900-01 (¶43) (Miss. Ct. App. 2015)).

¶24. Mississippi Rule of Criminal Procedure 14.1(b) provides, in relevant part:

When an indictee may be eligible for enhanced punishment because of one (1) or more prior convictions, the State shall either:

(1) specify such prior conviction(s) in the indictment, identifying each such prior conviction by the name of the crime, the name of the court in which each such conviction occurred and the cause number(s), the date(s) of conviction, and, if relevant, the length of time the accused was incarcerated for each such conviction; or

(2) after indictment, and at least thirty (30) days before trial or entry of a plea of guilty, file with the court formal notice of such prior conviction(s). The notice shall be served upon the defendant or the defendant's attorney and shall contain the same information specified in subsection (1) of this rule. . . .

MRCrP 14.1(b).

¶25. In February 2017, Johnson was indicted for kidnapping. Two years later, in February 2019, the State filed a motion to amend the indictment. The court granted the State's motion in March 2019, and the indictment was amended to include the following:

SENTENCE ENHANCEMENT

Archie Johnson has been convicted twice previously of felony crimes upon separate charges brought and arising out of separate charges brought and arising out of separate incidents at different times and has been sentenced to and served separate terms of one (1) year or more, whether served concurrently or not, in any state and/or federal penal institution, and where any one of such felonies shall have been a crime of violence, as defined by Section 97-3-2, as shown by the following:

Archie Johnson was convicted of the crimes of Robbery and Convicted Felon with a Gun in the Circuit Court of Hinds County, Mississippi on October 21, 2010, in Cause Number 07-222 and was sentenced to serve fifteen (15) years in MDOC custody with five (5) suspended for the Robbery charge and ten (10) years five (5) suspended for the Felon with a Gun charge. Sentences were to be served concurrently.

Archie Johnson was convicted of the crime of Manslaughter in the Circuit Court of Hinds County, Mississippi on August 30, 1999, in Cause Number 98-2-366 and was sentenced to serve six (6) years in MDOC custody.

¶26. At the sentencing hearing, an MDOC employee testified about Johnson's prior convictions. The State relied on a conviction for manslaughter, a conviction for robbery, and a conviction for possession of a firearm by a felon. With respect to the manslaughter conviction, Hilcott testified that on August 30, 1999, Johnson was sentenced to five years in the custody of the MDOC and indicated that he served 2,011 days. With respect to the other conviction, Hilcott testified that in February 2009, Johnson was sentenced to ten years in the custody of the MDOC for armed robbery and served a total of 2,180 days. Hilcott further testified that Johnson was sentenced to fifteen years for another armed-robbery conviction, and "[o]n that same booking he was sentenced for Robbery . . . and also Possession of a Firearm by a convicted felon. His total term was 2,180 days." Additionally, Johnson's pen-pack was admitted into evidence without objection.

¶27. Johnson seemingly suggests that because his prior convictions were more than ten years old, they could not have been used for enhancement purposes. However, Mississippi Code Annotated section 99-19-83 provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more, whether served concurrently or not, in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation or any other form of early release from actual physical custody within the Department of Corrections.

Miss. Code Ann. § 99-19-83 (Rev. 2015). There is no requirement that the prior convictions

must be less than ten years old.[4] For these reasons, this issue is without merit.

### IV. Whether the court erred by not declaring a mistrial.

¶28. Johnson claims that because Williams failed to identify him at trial, the court should have declared a mistrial. In response, the State argues that Williams did not move for a mistrial, and therefore the issue is waived. This Court has held that the failure to timely request a mistrial is a procedural bar to our review of the issue. *Smith v. State*, 90 So. 3d 122, 126 (¶9) (Miss. Ct. App. 2012). Notwithstanding any waiver, this issue is without merit.

¶29. At trial, the prosecutor asked Williams if she saw the suspect in the courtroom, and she responded in the affirmative but indicated that she did not want to see him. Then the following colloquy occurred:

| | |
|---|---|
| STATE: | Do you see the man that popped up on your porch that day? |
| WILLIAMS: | Yes. |
| STATE: | Can you tell us where he is, Miss Aldora? |
| WILLIAMS: | Somewhere over there. |
| STATE: | Can you tell us what he has on? |
| WILLIAMS: | Wearing that walnut shirt, jacket; whatever it is. |
| STATE: | Walnut color? |
| WILLIAMS: | Yeah. |

---

[4] Under Mississippi Rule of Evidence 609(b), evidence of a prior conviction for impeachment purposes is generally not admissible if more than ten years have elapsed since the date of conviction or of the release of the witness from the confinement imposed for that conviction. However, Johnson's prior convictions were not used for impeachment; rather, they were used to enhance his sentence.

. . . .

| | |
|---|---|
| STATE: | Miss Aldora, we need to be sure who you're talking about, okay. So do you mind standing up for me so you can see really good. |

(Witness complies.)

. . . .

| | |
|---|---|
| STATE: | And can you point out the man that popped up on your porch, if you see him? |
| WILLIAMS: | Yes, sitting there. |
| STATE: | He's sitting right there, okay. Tell us what color he has on? |
| WILLIAMS: | It look[s] like a walnut color to me. So it may be white but it's - - |
| STATE: | It's a white shirt? Is that who you pointed out? |
| WILLIAMS: | Yes. |

. . . .

| | |
|---|---|
| STATE: | Your Honor, we would ask that the record reflect that the victim has identified Mr. Johnson as the person with the walnut color or white color shirt. |
| COURT: | The record will reflect that. |

¶30. The record reflects that Williams identified Johnson at trial. Therefore, even if Johnson had requested a mistrial, this issue is without merit.

**V.     Whether the charging affidavit and indictment were illegal.**

¶31. Finally, Johnson claims that the charging affidavit was illegal because it did not comply with Mississippi Rule of Criminal Procedure 2.2. In addition, Johnson claims that

13

the indictment was illegal because it was not returned by a grand jury as required by Mississippi Rule of Criminal Procedure 13.6.

### A. Affidavit

¶32. Johnson claims that the charging affidavit was illegal because it did not comply with Mississippi Rule of Criminal Procedure 2.2. This rule states:

> **(a) Probable Cause Determination.** If it appears from the charging affidavit and the evidence submitted that there is probable cause to believe that the offense complained of has been committed and that there is probable cause to believe that the defendant committed it, the judge shall proceed under Rule 3.1. Before ruling on a request for a warrant, the judge may examine under oath the affiant and any witnesses the affiant may produce.

> **(b) Evidence.** The finding of probable cause shall be based upon evidence, which may be hearsay in whole or in part provided there is a basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished.

MRCrP 2.2.

¶33. After interviewing Williams, Detective Haynes executed an affidavit that stated on information and belief, Johnson, on or about June 4, 2016, in Hinds County "did willfully, unlawfully and feloniously seize and confine Aldora Williams, a human being with intent to cause the said Aldora Williams to be secretly and imprisoned against his [sic] will, in violation of Section 97-5-53, Miss. Code . . . ." This was a sufficient charging affidavit under the Mississippi Rules of Criminal Procedure. *See* MRCrP 1.4(d). Because it appeared from the affidavit and the evidence that there was probable cause to believe that the kidnapping had been committed and that Johnson had committed it, the judge properly issued a warrant for Johnson's arrest. This issue is without merit.

## B. Indictment

¶34.    Johnson claims that the indictment was illegal because it was not returned by a grand jury.  Under Mississippi Rule of Criminal Procedure 13.6(b), "[w]hen an indictment is found, it must be endorsed 'A True Bill,' shall be signed by the foreperson, and may be signed by one of the prosecuting attorneys."  MRCrP 13.6(b).  Johnson's indictment was filed on February 23, 2017, endorsed "a true bill," and signed by the grand jury foreman and assistant district attorney.  Therefore, this issue is without merit.

¶35.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**